### J. M. GROSS v. ED. HAYS.

#### No. 6072.

1.  **Partnership—Parol Agreement.**—Parties contemplating partnership agree ˉupon the terms of the partnership. A written contract was prepared and was signed by one of the parties. In a suit between them, and after the parol contract was proved upon the trial. it was not error to admit the writing though signed by but one; but if ·error, as there was no controversy about the terms of the partnership, it was no ground for reversal.

2.  **Tenancy at Will—Joint Occupancy.**—Two partners in the drug business had their business in the lower story of a building owned by one. The other with his family occupied the upper story as a residence, access to which was through the door to the store. The former in absence of the latter with his family locked the outer door, thereby shutting off from the upper story. Upon gaining access to the upper story the tenant found his trunk there broken open and its contents taken, besides other losses. In a suit for damages, *held:*

1.  That even a tenancy at will would have required on part of the landlord terminating the estate some care against loss to the tenant.

2.  But such an agreement as shown did not evidence a tenancy under the owner but· ˉan agreement for joint occupancy.

3.  The evicted partner was entitled to actual and exemplary damages.

APPEAL from Dallas. Tried below before Hon. Geo. N. Aldredge.

September 1, 1882, appellee Hays brought suit against J. M. Gross for the possession of a quantity of goods, household furniture, wearing apparel, etc., of alleged aggregate value of $606.50. A writ of sequestration was obtained and the sheriff took such of the described articles as were found. The defendant declining to replevy the plaintiff gave a replevy bond. The petition alleged that the goods had been forcibly, illegally, and willfully taken from plaintiff's possession by the defendant. The acts were alleged to have been done maliciously and with intent to vex, harrass, and oppress the plaintiff.

The defendant pleaded a general denial; and further, "that the property sued for was never in his possession; that there was some property left by the plaintiff in a house owned by defendant, and which house was in

his possession, and that he never at any time claimed said property, nor did he prevent plaintiff at any time from getting said property; that he knows nothing about said property one way or the other, and enters a disclaimer to said property."

The testimony showed that the parties were partners in the drug business in the town of Mesquite, in Dallas County, occupying the lower story of a house owned by Gross as a drug store. In the upper story of the house, by consent of Gross, Hays and his wife resided. Access to the upper story was through the lower story. Both parties had keys to the outer doors. The partnership was formed in February, 1882, and the business continued until August 22 of the same year, when the parties had a misunderstanding about their business. On the 23d of August Hays took the books of the firm to Dallas to get legal advice, leaving his wife. That night the wife fearing to remain alone spent the night with a friend. During the night Gross changed the locks to the store doors so that on 24th neither the wife of Hays nor himself could get to their room in the upper story. The wearing apparel of both Hays and wife save what they had on was shut up from them. After obtaining the writ of sequestration the room was entered. A trunk had been broken open, its contents in part missing; other damages resulted. The opinion gives details of items and values.

The defendant asked the charge, "If plaintiff was a tenant at will of the defendant—that is, if he was occupying the rooms in the house of defendant simply by his permission, without any contract as to the length of time such occupany should continue—then defendant would have the right to close said house and deny plaintiff its occupancy at any time."

"And if you find that plaintiff so occupied said rooms, and in addition you find that defendant did close said house and did not deny plaintiff the right to take from said rooms the property of plaintiff mentioned in his petition, and did not take and destroy any of said property, then you will find for the defendant. If defendant did terminate said occupancy as above stated, then after its termination it was the duty of plaintiff to look after, take care of, and remove the property  *  *  *  from said rooms, and if plaintiff failed to do so he must bear the loss or damage that happened to said property, and defendant is not liable for any loss or damage to said property unless he denied to plaintiff, and after demand, the right to remove said property, or took or destroyed same or some part thereof." These charges were refused.

The fact of the partnership was not in dispute in the testimony, but a written contract signed only by Hays was read over objection by Gross. It seems only to have been introduced to give some details of the agreement. The additional facts necessary are in the opinion. The verdict was for $264.60 actual and $350 exemplary damages. The defendant appeals.

*Wright, Wright & Eckford,* for appellant. — 1. To entitle appellee to recover it was necessary for him to have in some way demanded possession of his property or the house that it was in of appellant, and if he did not make an effort to get his property any damages to or loss of the property could not be visited on appellant. 1 Southerl. on Dam., pp. 148, 152, 254, 155.

2. If appellee was a tenant at will of appellant, then appellant had the right to close said house and deny appellee its occupancy at any time. 4 Kent Com., p. 116; 2 Water. on Tresp., p. 576, sec. 932; State v. Ross, 69 Am. Dec., pp. 71, 754, and notes of authorities collated.

*Stemmons & Field,* for appellee.—Appellee was not a tenant at will of the appellant, but if he was such tenant he could not be forcibly evicted. Appellant should have resorted to the law for relief. Rev. Stats., arts. 2440, 2442; Holmes v. Holloway, 20 Texas, 658; Warren v. Kelly, 17 Texas, 551.

STAYTON, CHIEF JUSTICE.—Appellant and appellee were together engaged in a retail drug business in a house belonging to appellant, the lower story of which was occupied as a drug store and the upper story by appellee and his wife as a residence, in which was all their household furniture, wearing apparel, and other valuable property. The business seems to have commenced about February, 1882, and continued until August 22, at or before which there was some misunderstanding between them. The entry to the upper story was through the store room, and to the door of this appellant and appellee each kept a key.

On August 22 appellee went to Dallas, the place of business being the town of Mesquite, to get legal advice in reference to the settlement of the business between the parties, leaving his wife in the house, but she fearing to remain alone during the night locked the house and spent the night with a neighbor. Appellee returned to the house on the morning of August 23 with his wife, when they found that the lock on the door had been changed and they were unable to enter.

There is evidence tending to show that appellant knew of their desire to enter the house while they were there, but that he made no offer to permit them to do so. On September 1, 1882, this action was brought by appellee to recover his property and for damages actual and exemplary for the violation of his right. He caused his property to be sequestrated, and when the upper room, in which it was, was entered by the sheriff it was found that a trunk had been broken open and therefrom gold coin, legal tender notes, silver certificates, and a check collectable by any one, amounting together to the sum of $132.75, had been taken.

It further appeared that fruits in course of preparation for preserving to the value of $25 had spoiled when the house was opened, and that four

mocking birds which were shown to be of the value of ten dollars each had died.

There was no controversy as to the ownership of the property in the upper room, nor as to the value of that lost, and there was a judgment rendered in favor of appellee for a sum less than the estimated value of the things lost, with interest added thereto as actual damages, and a further verdict and judgment for $350 as exemplary damages.

The possession of the entire house by appellee was shown to be legal, and the evidence tends to show that this was in pursuance of a partnership agreement under which the property was to be used for the period of one year.

It appeared on the trial that the partnership agreement had not been signed by both parties, although it had been drawn in duplicate and signed by Hays early in the year and one copy given to appellant, who approved it and promised to sign it.

Under this state of facts it must be held that there was no contract in writing, but that there was a parol contract is made clear.

On the trial, in connection with the verbal evidence showing the above facts and the leading terms of the contract, appellee was permitted to read in evidence the copy signed by himself, which was objected to.

It may have been admissible in corroboration of the other evidence as to what the contract between the parties was (Lathrop v. Bramhall, 64 N. Y., 371), about which it seems there was but little controversy as to any matter involved in the issues in this case. If not admissible, we do not see that it could have operated to the prejudice of appellant.

The second assignment of error is that "the court failed to charge the jury the law applicable to facts and pleadings in this cause." This assignment specifies no particular matter as error and can not be considered.

Appellant asked a charge not applicable to the facts of the case, and embracing several legal propositions not correct or as framed misleading.

If it had appeared that appellee was occupying the house as a mere tenant at will the charge would have been incorrect, in that under it the jury would have understood that if such was the relation of the parties it was the right of appellant to lock the house with the property of appellee in it and to be bound to no diligence whatever for its preservation. Such a charge was properly refused.

The evidence, however, did not tend to show that appellee was a tenant at will or even strictly a tenant at all, but did tend to show a joint occupancy of the house for the conduct of a business in which they were both interested, which made it necessary as well as proper for the conduct of the business that appellee should remain there until the business ceased, and his possession for this purpose of the upper story was to some

extent exclusive, but in the act of excluding him from that part jointly occupied appellant excluded him from the entire house.

The fourth assignment of error is that "the verdict of the jury is contrary to the evidence and against the evidence." This assignment is too general to be entitled to consideration.

The sixth assignment questions the sufficiency of the pleadings to justify a judgment for exemplary damages.

The petition alleges the right of appellee to occupy the house with his property, and alleges that the acts of appellant in depriving him of the possession and retaining his property was willful, illegal, and malicious, and done with intent to vex, harrass, and oppress. If this was true it furnished a cause for exemplary damages.

It is urged that the damages awarded are excessive, and that there was no evidence to justify the imposition of exemplary damages.

The actual damages allowed are not more than will compensate appellee for property actually lost, and if it was a case for exemplary damages the verdict in that respect can not be said to be excessive.

Appellee is shown to have been entitled to the occupancy of the house at the time its doors were closed upon him. This was done without warning, and so far as appears from the evidence without necessity. Possession even of the wearing apparel of appellee and wife was withheld from them, or at least under the control and in the possession of appellant without right. Appellant's action was arbitrary and looked toward oppression. He took the righting of his fancied wrongs into his own hands when the law would have offered him ample and speedy redress had he shown himself entitled to it and applied for it; and we regret to say that his letters written to appellee with his whole course of conduct gave the jury just ground to believe that his conduct may have been moved by malice.

The jury evidently so believed. Their finding was approved by the judge who tried the cause, and we do not in view of all the facts feel authorized to hold that grounds for exemplary damages were not shown.

There is no error in the judgment and it will be affirmed.

*Affirmed.*

Delivered April 16, 1889.