HOWIE MINING CO. v. McGARY et al.

(District Court, N. D. West Virginia. February 26; 1919.)

1. JUDGMENT ⊜⊶143(10)—DEFAULT—GROUNDS FOR SETTING ASIDE.
   Defendants *held* not entitled to vacation of a default judgment, entered over a year after return day, although their nonappearance was apparently due to loss in the mails of a letter from their attorney to the clerk, asking a copy of the declaration when filed, to which no answer was received, where no further inquiry was made, and under the state statute, if no declaration was filed within three months, they were entitled to nonsuit or dismissal.

2. ARMY AND NAVY ⊜⊶34—SOLDIERS' AND SAILORS' CIVIL RELIEF ACT—CONSTRUCTION—DEFAULT JUDGMENTS.
   Provision of Soldiers' and Sailors' Civil Relief Act March 8, 1918, § 200 (Comp. St. 1918, § 3078¼bb), requiring plaintiff, before entry of judgment against a defendant in default, to file affidavit that he is not in the military service, construed, and the fact that such affidavit was not filed *held* not to entitle defendants, who were not in fact in the service, to have set aside a default judgment against them.

At Law. Action by the Howie Mining Company against David McGary and W. E. Covert. On motion by defendants to set aside judgment by default. Denied.

H. M. Abercrombie, of Baltimore, Md., Fred A. Dolph, of Chicago, Ill., Clarence E. Martin, of Martinsburg, W. Va., D. B. Evans, of Moundsville, W. Va., and Frank A. O'Brien, of Wheeling, W. Va., for plaintiff.

John P. Arbenz, of Wheeling, W. Va., for defendants.

DAYTON, District Judge. Defendants, under section 4979, Hogg's W. Va. Code 1913 (section 5, c. 134), have made a motion to set aside

the default judgment entered in this case in term at Martinsburg, on the 4th day of April, 1918. The reasons assigned for such relief sought are:

First—Because of the fraud practiced therein against the defendants, and each of them, by the plaintiff, or at least by certain of its attorneys.

Second—That both of the defendants exercised due diligence in the protection of their rights and the prosecution of their case, but they virtually never have had their day in court—never had even an opportunity to be heard or to present their defense, and all this, too, through no fault of theirs.

Third—That the judgment was taken after the act of Congress, known as "Soldiers and Sailors Civil Relief Act," approved March 8, 1918, was in force, and the affidavit or proof that defendants were not in the military or naval service of the United States at the time was not filed.

The substantial facts are these:

Summons was sued out of the clerk's office at Martinsburg on February 7, 1917, returnable to March rules. By the West Virginia statute rules are held in the clerk's office every first Monday in a month, except when a term of court happens to commence on the first Monday in a month, or either of the two following days, or on the preceding Tuesday, Wednesday, Thursday, Friday, or Saturday, the rules which otherwise would have been held for the said month on the first Monday, shall be held on the last Monday in the next preceding month, The rules may continue three days; but when in any case such continuance would interfere with the terms of the court for which the rules are held, they shall not continue in such case beyond the day preceding the commencement of the term of court. The rules may be to declare, plead, reply, rejoin, or for other proceedings; they shall be given from month to month.

A defendant may appear at the rule day at which the process against him is returnable, or, if it be returnable in term, at the first rule day after the return day, and, if the declaration or bill be not then filed, may give a rule for the plaintiff to file the same. If the plaintiff fail to do this at the succeeding rule day, or shall, at any time after the defendant's appearance, fail to prosecute his suit, he shall be nonsuited, and pay to the defendant, besides his cost, $5. If three months elapse after the process is returned executed as to any one or more of the defendants, without the declaration or bill being filed, the clerk shall enter the suit dismissed, although none of the defendants have appeared. Hogg's W. Va. Code, §§ 4755, 4759, 4760, and 4761 (chapter 125, sections 1, 5, 6, and 7).

[1] It is not controverted that the summons, served in person on both defendants, with proper indorsement of such service, was returned by the marshal to March rules, 1917, at which no appearance was made and no declaration filed; at April rules following no appearance was made and no declaration filed; at May rules the declaration was filed and common order taken, which at June rules was confirmed and a writ of inquiry awarded. The effect of these proceedings at rules, with no appearance by the defendants, was to establish liability and leave only the amount of damages to be awarded, to be ascertained by the court. The next term of court was held, commencing on the third Tuesday of September (the 17th), 1917, when

ordinarily, this writ of inquiry would have been executed, the damages ascertained, and judgment therefor rendered. This, however, was not done, but, on the contrary, an order was entered continuing the execution of the writ of inquiry, setting it down for trial at the following term, to be held commencing on the first Tuesday (the 2d) of April, 1918, when on the third day of that term the writ of inquiry was tried, the damages ascertained, and the judgment therefor entered. Under the rules of pleading and practice of the state, which we are required to follow, up to the this 4th day of April, 1918, the defendants were entitled to appear, have the common order set aside, and enter such pleas and make such defense as they might be advised to do; but no such appearance was made. Specifications of damages were filed, and a number of witnesses were introduced by the plaintiff on the trial to support its demands.

It is now set forth in affidavits tendered, and not disputed, that, shortly after defendants were served with process instituting the suit, they employed a most reputable attorney of large practice and great ability, resident in Wheeling, distant from Martinsburg something near 300 miles, to represent them and protect their interests in the case; that this attorney, under date of March 5, 1917, directed to the deputy clerk of this court at Martinsburg a letter as follows:

"As soon as the declaration is filed in the case of Howie Mining Company v. David McGary and W. R. Covert, please send me a certified copy of it, together with your bill therefor."

This letter was dictated by the attorney to his stenographer, who says he made a transcript of it, signed the attorney's name to it, made a letter press and a carbon copy of it, addressed it to the deputy clerk at Martinsburg, and mailed it to him. At the instance of the clerk of this court, his deputy at Martinsburg has made two statements, to the effect that he has made two distinct careful examinations of his official files, finds no such letter therein, has no recollection of ever having received or seen any such letter, and that his uniform custom, upon receipt of such letters, is to answer them promptly. It is not improper to say in this connection that this deputy clerk has long held this place, is thoroughly competent, very careful and experienced in the duties of his office, a lawyer of high standing in his profession, and a man of the strictest integrity and honor. It would seem, therefore, beyond question that such letter was sent, but not received.

The defendants in their affidavit say, after stating the employment of the attorney, that upon a number of occasions they had conversations with him, and was informed by him that he had received no reply to this letter from the deputy clerk, and that therefore he assumed that no declaration had been filed; that at least four months after the bringing of the suit the attorney told them no reply had been received to the letter, and that undoubtedly the suit had been dismissed for failure to file a declaration therein. It further appears from these affidavits that one Smith H. Bracey was president of the plaintiff company; that in the criminal court at Wheeling an indictment had been presented against him at the instance of the defendants McGary and Covert as prosecuting witnesses; that they had employed this

same attorney of theirs to assist, and he did assist, in the prosecution of this criminal proceeding against Bracey; that three of the attorneys representing the plaintiff in this civil action had defended Bracey in the criminal prosecution, and therefore defendants verily believe that said three attorneys knew, at the time this judgment was taken by default, that they had employed their attorney to make defense herein, but concealed such knowledge from the court.

Much as this court may regret any injustice done, if any has been done, to defendants, it cannot reconcile itself to the conclusion that these facts warrant it in setting aside this judgment. It can hardly be held that failure to receive an answer to a letter, liable to be lost in the mails, as doubtless was the case here, will justify their sleeping on their right to appear on the return day of their summons, give rule to plaintiff to file its declaration, and in case it failed to do so within the time expressly required by statute, have the case promptly dismissed in the clerk's office. Too much hazard is involved in basing court procedure upon the delivery of ordinary letter mail. Fully conceding the letter to the clerk was mailed, the mental query constantly recurs, why, when no answer came, was no other inquiry made, no other letter even written, to ascertain whether they could rest in security and believe the action dismissed for failure to file the declaration? Neither attorney nor defendants seem to have made a suggestion, one to the other, that such very natural course could be taken, in order that they might be sure in their suppositions that the action had been abandoned. And yet for a year, substantially, they could have made such inquiry and been in time to make defense. The law can hardly justify any one, in small and unimportant litigation, to be so negligent. Here a very large sum was sued for, and yet a year was allowed to go by without any effort made to defend, solely because a letter to the clerk remained unanswered.

But, if we were to assume that the letter had been received by the clerk, that he laid it aside, and forgot, when the declaration was filed, to send the copy, or the extreme case that he deliberately declined to answer it and send the copy, it would seem to be no excuse for the defendants' laches in the premises. The law lays down a straight road for one sued to travel to his defense. He must obey its mandate, appear in person or by attorney, demur or plead to the declaration, if filed, and, if not, by rule demand either that it be filed or the action be dismissed. The law goes farther in his behalf, and requires the action to be dismissed by the clerk after the lapse of three months, if no declaration is filed. Surely the least degree of prudence would require a defendant to see that this was done. The letter in question, only by implication, could convey to the clerk, if he had received it, any idea that it was the purpose of the attorney sending it to enter an appearance in any way to the action for the defendants. It does not disclose that he was writing on their behalf or as their attorney. The clerk, living so far away, was not at all likely to have knowledge that the relation of attorney and client had ever existed between the parties, or that they even knew each other. It is certainly no uncommon thing for clerks of courts to receive requests for copies of papers of

this kind from attorneys who are not representing either plaintiffs or defendants, and in many cases it would be deemed impertinent for him to inquire for what purpose such attorney desired such copy.

Nor can this court perceive how the proposition can be maintained that any legal obligation rested upon attorneys for plaintiff, even if they knew of the employment of the attorney by defendants in the case, to inform such attorney that the declaration had been filed and the action was to be prosecuted. Of the three attorneys for plaintiffs assumed to have such knowledge, one lived in another state, another in another county, and only one in the same county and city as the attorney employed by the defendants. As to this latter it is suggested in argument that, if defendants desired to know from him the status of the proceeding, it was incumbent upon them and their attorney to come to and ask it of him, and not incumbent upon him to go and volunteer the information to them; that, if they did not seek information of the kind from him, he had right to assume they were fully informed through other channels, or did not care for it. While this court strenuously insists upon the broadest exercise of courtesy between members of the bar in their relations to each other, it cannot go so far as to require additional obligations as to the maturing of law causes than those imposed by the law of pleading and practice. The law of the case, as held by the courts, is so clearly enunciated in the opinions of Judges Keller and Pritchard in Wylie Permanent Camping Co. v. Lynch, 195 Fed. 386, 115 C. C. A. 288, as to make further citations unnecessary.

[2] The third and last ground on which this motion is based, that the "Soldiers' and Sailors' Civil Relief Act" (Act March 8, 1918, c. 20, 40 Stat. —— [Comp. St. 1918, §§ 3078¼a–3078¼ss]) was not complied with by the filing, at the time this judgment was taken, of an affidavit, or other evidence, that these defendants were not, at the time, in the military or naval service, has presented greater difficulty in its determination. It will be recalled that this act was not approved until March 8, 1918, and this judgment was rendered less than a month after, on April 4, 1918. At that time the act had not been generally promulgated, and, as yet, this court has not been able to find where any judicial construction of its terms has been enunciated. The plaintiff has, upon this motion, tendered an affidavit of one of its attorneys that neither of these defendants had been or were in the service contemplated by the act during the war, and it is not contended by defendants themselves that they, or either of them, are or have been in such service.

They contend, in effect, however, that in all cases where defendants fail to appear this statute goes to the jurisdiction of the court—that it has no power, while its provisions are in force, to enter judgment against any defendants until the affidavit, or one of them, required by the act, has first been filed by the plaintiff. They base this contention upon the first section of article 2 of this act (Comp. St. 1918, § 3078¼bb) reading as follows:

"In any action or proceeding commenced in any court if there shall be a default of an appearance by the defendant the plaintiff before entering judg-

ment shall file in the court an affidavit setting forth facts showing that the defendant is not in military service. If unable to file such affidavit plaintiff shall in lieu thereof file an affidavit setting forth either that the defendant is in the military service or that plaintiff is not able to determine whether or not defendant is in such service. If an affidavit is not filed showing that the defendant is not in the military service, no judgment shall be entered without first securing an order of court directing such entry, and no such order shall be made if the defendant is in such service until after the court shall have appointed an attorney to represent defendant and protect his interest and the court shall on application make such appointment. Unless it appears that the defendant is not in such service the court may require as a condition before judgment is entered that the plaintiff file a bond approved by the court conditioned to indemnify the defendant, if in military service, against any loss or damage that he may suffer by reason of any judgment should the judgment be thereafter set aside in whole or in part. And the court may make such other and further order or enter such judgment as in its opinion may be necessary to protect the rights of the defendant under this act."

If this construction contended for by defendants' attorney be true, this act must inevitably have very sweeping, far-reaching effect, not only during this period of the war, but for years thereafter; for it is safe to say that in the inferior courts of the country many hundreds, if not thousands, of judgments have been taken where the affidavit has not been filed, all of which would become absolutely void. In such case, it might be doubted whether the act could be maintained as constitutional even as war-time legislation, but it is not deemed necessary here to discuss that proposition. There are several reasons why I do not regard it as applicable to this case:

First. By the terms of this section itself a question arises at once as to what character of cases is meant by the words "default of an appearance" by the defendant. There are a large number of cases constantly brought in our courts by publication of notice or summons, such as divorce cases in personam, or attachment cases in rem, where no personal service is had upon a defendant, in which, however, the courts are by law authorized to proceed to decree and judgment. This statute in construction could very well be restricted in application to such, for when one has been, in person, properly served with process, he is presumed to be in court, and the legal obligation upon him to appear and make his defense, if he has any and desires to do so, becomes imperative. It can hardly be presumed that Congress intended that one, for instance, not in service, so served, and upon whom such obligation in consequence rests, should, by reason of being even afterwards called to service, be relieved of the instant legal obligation upon him that he had theretofore incurred.

Second. Be this as it may, it seems clear that the terms of the act should be construed together, with a view to ascertain the reasonable purpose designed to be accomplished by it. It cannot be questioned that it is exclusive in its terms, designed solely for the benefit of certain persons for the time being in certain defined classes of military and naval service, their sureties, indorsers, and guarantors, and no others. This is made very clear by the sections of article 1 of the act; further, that it does not pretend to abrogate the contracts of such persons, but only to suspend the enforcement thereof by legal proceed-

ings for a specified period; that the entering of such judgment or decree against such persons may notwithstanding be by the court done, provided it has appointed an attorney to represent such person in service to protect his interest, and has required of plaintiff a bond to indemnify the defendant in such service "against any loss or damage that he may suffer by reason of any judgment, should the judgment be thereafter set aside in whole or in part."

Third. If action is brought against such person in service, the court in which it is pending, in its discretion, on its own motion, or upon application of such defendant in service, or some one for him, shall stay the prosecution of the action for the period specified, "unless, in the opinion of the court, the ability of the plaintiff to prosecute the action, or the defendant to conduct his defense, is not materially affected by reason of his military service," and in case of executions, attachments, and garnishments, like stay may, in the discretion of the court, under like conditions, be granted, and attachment or garnishment of property, money, or debts in the hands of another, whether before or after judgment, may be vacated. Where the person in military service is a codefendant with others, the plaintiff may nevertheless, by leave of court, proceed against the others. From all these provisions, taken together, it seems to be clear that Congress had no intention by this act to either destroy or limit the inherent jurisdictional right of the courts to try cases, or enforce rights and remedies, against people generally, but only to secure certain security for those certain persons in military and naval service who might otherwise by reason of service be subject to injustice and oppression.

Fourth. To fully establish the view herein taken, it would seem that the terms of the fourth clause of this article 2 of the act is conclusive. This clause reads as follows:

"(4) If any judgment shall be rendered in any action or proceeding governed by this section against any person in military service during the period of such service or within thirty days thereafter, and it appears that such person was prejudiced by reason of his military service in making his defense thereto, such judgment may, upon application, made by such person or his legal representative, not later than ninety days after the termination of such service, be opened by the court rendering the same and such defendant or his legal representative let in to defend; provided it is made to appear that the defendant has a meritorious or legal defense to the action or some part thereof. Vacating, setting aside, or reversing any judgment because of any of the provisions of this act shall not impair any right or title acquired by any bona fide purchaser for value under such judgment."

In view of all these provisions, I conclude that this statute does not affect in any way the right of the courts to assume jurisdiction over individual citizens not engaged in the service specified by the statute; that in case they have or do assume such jurisdiction over one in such service, it is their duty, in case attention is called to the fact, by either the defendant in service or some one for him, to see to it that such defendant is properly represented by attorney and the action is stayed unless his interests will not be materially affected or he is by bond indemnified; that in case judgment is taken against him he has full remedy under this fourth clause to have such judgment vacated; that

none of these provisions can in any way inure to the benefit of persons not in such service and therefore, unless one or the other of these defendants can show that he was in such service at the time this judgment was rendered the failure of the plaintiff to file affidavit that such was not the case becomes wholly immaterial, so far as any right on their part is concerned, to disturb or cause this judgment to be set aside. They do not assert or claim to have been in such service, and, on the contrary, the plaintiff tenders an affidavit that they were not. I can see no reason why such affidavit, uncontradicted by defendants, cannot on this motion be accepted and filed, to show that no injustice in this particular has been done defendants and no error in rendering the judgment to their prejudice has been committed.

The motion to set aside must be overruled.