BASSHAM et al. v. EVANS. (No. 1566.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 12, 1919.)

1. SEQUESTRATION ⊙�findⁿ21—PROCEEDING NO DEFENSE IN TRESPASS WHEN OWNER WAS NOT A PARTY.

In action against defendants who had obtained possession of plaintiff's premises by sequestration proceedings without making plaintiff a party thereto, the sequestration proceedings and the issuance and levy of the writ on the property is no defense.

2. SEQUESTRATION ⊙⟼15—REPLEVY BY OWNER NOT PARTY TO PROCEEDINGS.

Owner of sequestrated property who was not a party to the sequestration proceedings could not have replevied property under Rev. St. 1911, art. 7103, providing that when property has been sequestrated the defendant therein may replevy by giving bond.

3. SEQUESTRATION ⊙⟼21—PETITION IN ACTION FOR WRONGFUL SEQUESTRATION.

Owner attacking sequestration proceedings to which he was a party as being wrongfully sued out would be required to negative the grounds stated in the affidavit and state his damages occasioned by such wrongful act, and, if he desires punitory damages, would be required to allege that it was willful, malicious, or the like, and without probable cause.

4. ARMY AND NAVY ⊙⟼34—DAMAGES FOR SEQUESTRATION OF SOLDIER'S PREMISES.

Soldier who was ejected from his premises by means of sequestration proceedings and was deprived of the protection to which he was entitled under Soldiers' & Sailors' Civil Relief Act (U. S. Comp. St. §§ 3078¼a–3078¼ss) could recover damages, regardless of whether facts stated in affidavit for sequestration are true or false.

5. TRESPASS ⊙⟼12 — UNAUTHORIZED ENTRY UPON LAND.

Every unauthorized entry upon land of another is a trespass, and is a willful trespass if intended and deliberate.

6. SEQUESTRATION ⊙⟼21 — PETITION SUFFICIENT TO AUTHORIZE EXEMPLARY DAMAGES.

In action against defendants who had obtained possession of premises by means of sequestion proceedings to which plaintiff had not been made a party, allegations showing a conscious disregard of plaintiff's rights by defendants *held* to authorize exemplary damages.

7. ATTACHMENT ⊙⟼368—EXECUTION ⊙⟼464— SEQUESTRATION ⊙⟼21—COMMON-LAW REMEDY FOR FAILURE TO MAKE OWNER A PARTY IN SEQUESTRATION.

When real or personal property had been levied on by a writ of execution, attachment, sequestration, or other such writ, to which the claimant or owner is not a party, he may resort to his common-law remedy for the damages inflicted by seizure thereunder.

8. ARMY AND NAVY ⊙⟼34—CONSTRUCTION OF SOLDIERS' AND SAILORS' CIVIL RELIEF ACT.

Soldiers' and Sailors' Civil Relief Act, art. 3, § 302 (U. S. Comp. St. § 3078¼ff), relating to proceeding to enforce obligations originating prior to approval of the act and secured by mortgage, trust deed or other security in the nature of a mortgage on property owned by person in military service has no application, in view of subdivision 1, to other obligations named in article 3, such as leases, rental contracts, or contracts for purchase of property which may at vendor's option be rescinded for nonpayment of purchase-money installments.

9. VENDOR AND PURCHASER ⊙⟼95(1)—FORECLOSURE OF LIEN AS ELECTION TO AFFIRM CONTRACT.

If vendor sues to foreclose his lien, he has elected to affirm the contract and rely upon his debt and lien, and after such suit stands in the position of a mortgagee, and cannot rescind the contract as executory.

10. ARMY AND NAVY ⊙⟼34—REMEDY OF PURCHASER UPON VENDOR'S VIOLATION OF SOLDIERS' AND SAILORS' CIVIL RELIEF ACT.

Where vendor brought suit to foreclose his lien against maker of purchase-money notes, even if he had made a party to the proceeding maker's grantee, who was in military service, the latter could not recover, under Soldiers' and Sailors' Civil Relief Act, § 301 (U. S. Comp. St. § 3078¼f), prior payments of purchase money as damages for vendor's recovery of the property without proceeding under such act, since vendor by lien foreclosure elected to affirm contract and to treat grantee as owner and to assume the position of mortgagee, so that grantee's rights were governed by section 302 (U. S. Comp. St. § 3078¼ff), and not section 301.

11. ARMY AND NAVY ⊙⟼34—RIGHT TO DAMAGES FOR VIOLATION OF SOLDIERS' AND SAILORS' CIVIL RELIEF ACT.

Where vendor violated Soldiers' and Sailors' Civil Relief Act, § 302 (U. S. Comp. St. § 3078¼ff), in foreclosing lien on soldier's property because of nonpayment of notes which soldier had guaranteed to pay upon conveyance of property to him by the maker without making soldier a party to the proceedings, soldier's right to damages was not affected by fact that maker was a party, and that soldier's father who was made a party was his agent and in possession, or by the fact that soldier's brother was a co-owner; the right under the statute being personal to the soldier in view of subdivision 3, and sections 203, 204 (U. S. Comp. St. §§ 3078¼d, 3078¼dd).

12. SEQUESTRATION ⊙⟼21—MENTAL ANGUISH NOT AN ELEMENT OF ACTUAL DAMAGES BUT GROUND FOR EXEMPLARY DAMAGES.

In action for trespass in wrongfully obtaining possession of plaintiff's property by sequestration proceedings, mental anguish occasioned by the trespass cannot be recovered as actual damages; although if the trespass were malicious or with evil intent, so that exemplary damages are recoverable, mental anguish may be considered in assessing such damages, under the rule permitting the jury, in assessing such

⊙⟼For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

damages, to consider damages too remote to be considered strictly compensatory.

**13. DAMAGES ⬤⇒91(1), 151—EVIL INTENT OR GROSS NEGLIGENCE NECESSARY TO RECOVER EXEMPLARY DAMAGES; PLEADING NECESSARY.**

In order to recover exemplary damages, the act which constituted the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence, such disregard of another's rights, as is deemed equivalent to such intent; and, when the bad intent is not a necessary inference from the act charged, it must be alleged.

**14. SEQUESTRATION ⬤⇒21 — WRONGFUL SEQUESTRATION; INSUFFICIENT PLEADING OF EXEMPLARY DAMAGES TO ALLOW RECOVERY OF DAMAGES FOR MENTAL DISTRESS.**

In action for trespass in wrongfully obtaining possession of plaintiff's premises by sequestration proceedings, where the allegations of the petition may have sufficiently charged a willful or evil intent and gross disregard of plaintiff's right, but the mental anguish as alleged was confined to actual damages, the petition alleging plaintiff "has suffered mental distress on account of his being deprived of the use of the said building for his said mother and father," and that he had been damaged in a sum equal to the rental value, etc., the petition would not support a recovery of exemplary damages, in which form only could damages for mental distress be recovered in such a case.

**15. SEQUESTRATION ⬤⇒21—MEASURE OF DAMAGES.**

In action against defendants who had obtained possession of premises by sequestration proceedings without making plaintiff a party to the proceedings in violation of his rights as a soldier under Soldiers' and Sailors' Civil Relief Act (U. S. Comp. St. §§ 3078¼a–3078¼ss), plaintiff's measure of damages was, not recovery of purchase money installments paid, but was the value of the use of premises and any special damage to the property.

**16. TENANCY IN COMMON ⬤⇒55(3)—PARTIES TO ACTION FOR TRESPASS.**

In action for trespass to property owned by two brothers, both should join in the action.

**17. PARTIES ⬤⇒80(2)—ACTION FOR TRESPASS WITHOUT JOINING CO-OWNER.**

In action for trespass wherein plaintiff's co-owner should have been joined as a party, plaintiff in absence of a plea in abatement may recover in proportion to his interest.

**18. ARMY AND NAVY ⬤⇒34—IN ACTION FOR SEQUESTRATION OF SOLDIER'S PROPERTY EVIDENCE OF SEQUESTRATION PROCEEDINGS ADMISSIBLE.**

In action against defendants who had obtained possession of plaintiff's premises by means of sequestration proceedings without making plaintiff a party in violation of plaintiff's rights under Soldiers' and Sailors' Civil Relief Act (U. S. Comp. St. §§ 3078¼a–3078¼ss), evidence of sequestration proceedings *held* properly admitted.

Appeal from District Court, Terry County; W. R. Spencer, Judge.

Action by Vard Evans against W. B. Bassham and others. Judgment for plaintiff, and defendants appeal. Reversed.

G. E. Lockhart, of Tahoka, for appellants. Percy Spencer, of Lubbock, for appellee.

HUFF, C. J. This is an appeal from a judgment in favor of appellee, Evans, against W. B. and T. F. Bassham and P. B. Brothers, for the sum of $1,500. The cause of action set up by Evans against the defendants is, substantially: That one C. C. Van Zandt, on February 1, 1918, purchased from W. B. Bassham lot 15, block 22, in the town of Brownsfield, together with certain articles of furniture then in use as a rooming house. That Van Zandt, as part of the consideration, executed 69 notes, of $25 each, due one on the 1st of each month, and consecutively thereafter, with interest from date at the rate of 8 per cent. per annum. That Bassham executed his warranty deed to Van Zandt, conveying the lot, therein reciting a cash consideration of $275, and the execution of the 69 notes. Thereafter, on the 28th day of March, 1918, the appellee, Vard Evans, with his brother, Jim Evans, purchased the lot, paying a cash consideration of $300, and assumed to pay 68 of the notes executed by Van Zandt, and that Van Zandt executed his warranty deed to the lots, reciting the consideration therein as above stated. That soon thereafter appellee was drafted in to the army of the United States of America, and was in the military service as that term is defined in the "Soldiers' and Sailors' Civil Relief Act" (Act March 8, 1918, c. 20, 40 Stat. 440 [U. S. Comp. St. §§ 3078¼a–3078¼ss]), at the times of the transactions thereafter set out and alleged. "Your plaintiff would also show to the court that the rights of this plaintiff in and to said property came within the meaning of a contract for the purchase of real and personal property, as used in said act." That about the 24th day of July, 1918, the appellants conspired to eject the appellee and did eject him from said property. That, although W. B. Bassham knew appellee was the owner of an interest in the property and in the military service, he attempted to exercise the right of option expressed in the notes, to declare all of them due on account of the nonpayment of certain installments due and which fell due while appellee was in military service, and instituted suit in the district court of Terry county against the said C. C. Van Zandt, the maker of said notes, and one M. L. Evans, the father of appellee, who was in possession of the premises, and asking for a personal judgment against Van Zandt upon the last 66 notes, principal, interest, and attorney's fees, and to foreclose the vendor's lien thereon.

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

That on the 29th day of July, 1918, W. B. Bassham made application to the clerk of that court for a writ of sequestration, and W. B. Bassham, joined by T. F. Bassham and P. B. Brothers, made and filed with the clerk a bond for sequestration and instructed the clerk to issue the writ of sequestration, which was issued, commanding the sheriff to seize the property and on the 30th day of July, 1918, caused the sheriff to seize and take possession thereof. That the sheriff held the property about 10 days, whereupon the appellants, in furtherance of their conspiracy to eject appellee, made and filed with the sheriff a replevy bond for said property, whereupon all of the property was delivered to W. B. Bassham, who has since about August 10, 1918, been in possession, enjoying the fruits, benefits, and revenues thereof. At the time of the institution of the suit and until the ejection, appellee and Jim Evans, his co-owner, were in possession of the property in the following manner:

"The mother and father of the said Vard Evans, your plaintiff, who were and are dependent upon him for support, were occupying said premises as a home and renting out certain rooms therein as a means for their support, and your plaintiff had in the building on said premises his trunk with his clothes therein, and other articles of personal property. That your plaintiff and his said mother and father were forcibly thrown out of said house and placed into the streets. That all of the actions and proceedings hereinabove set out were in this honorable court, and the papers in said cause are on file in the office of the clerk hereof and are hereby specially referred to and made a part hereof. That all of such actions are and were in gross violation of the right of your plaintiff, and were nothing less than an aggravated and willful and gross violation of the act of the Congress of the United States of America, enacted for the purpose of enabling the United States the more successfully to prosecute and carry on the war with Germany and her allies, and in gross violation of the protection thereby extended to the soldiers engaged in the service of the United States of America, and without any lawful right whatever.

"Your plaintiff would show to the court that he had paid the sum of $400 for said property, at the time of said unlawful ejection, and that the reasonable rental value of the said premises from the 10th day of August, A. D. 1919, is $35 per month.

"Your plaintiff would further show to the court that, on account of the fact that the United States government was behind with his pay, he was unable to meet the installments due upon said contract of purchase, at the time of said ejectment.

"Your plaintiff would show to the court that on account of the humiliation of having his dependent mother and father, each of whom are in feeble health and necessitous circumstances, thrown out in the streets and without a place to live in comfort and decency, while he was in the service of his country, he has suffered mental distress, and on account of his being deprived of the use of the said building for his said mother and father during said term he has been damaged in the sum equal to the rental value thereof, and on account of the unlawful eviction he has been damaged in the sum paid upon said premises, all of such damages being in the sum of $5,000, for which amount he sues. Wherefore, plaintiff prays that the defendants be cited to appear and answer this petition, and that on the trial hereof he have judgment for his damages, interest, and costs, and for such other and further relief, in law or equity, to which he may be entitled, and for this he will ever pray."

The first assignment is based on the action of the court in overruling the general exception. The appellants present three propositions thereunder, to the effect: (1) That this suit could not be maintained for the wrongful issuance and levy of the sequestration without the allegation that appellant was a party to the suit out of which it was issued. (2) The petition should also allege that the grounds set out in the affidavit for sequestration were untrue. (3) The exception should have been sustained as the petition shows the obligation of appellee was made subsequent to the passage and approval of the act referred to in the petition.

[1, 2] The sequestration proceedings and the issuance and levy of the writ on property, the title to which and possession of which is in a person not a party to the proceeding out of which it issued, is no protection to those using the writ to obtain possession of the property. It is as much a trespass on the rights of such third persons as if no writ had been issued. When such third person sues for damages or for redress for the invasion of his rights, the sequestration proceedings will not be a defense to such suit, much less a justification. If appellants desired to take the property out of appellee's possession and to foreclose his rights, they should have made him a party and have made the necessary affidavit charging him with the alleged wrong, and also indemnified him by making a bond, payable to him in case the writ was wrongfully sued out, and levied upon his property. The appellee, not being a party to the original suitor sequestration, could not have replevied the property under article 7103, R. C. S., providing that when property has been sequestrated the defendant therein may replevy by giving bond. Lane v. Kempner, 184 S. W. 1091; Vickrey v. Griffin, 154 S. W. 1057; Lang v. Dougherty, 74 Tex. 226, 12 S. W. 29. Our Supreme Court, in the case of Vickery v. Crawford, 93 Tex. 373, 55 S. W. 560, 49 L. R. A. 773, 77 Am. St. Rep. 891, held that a sequestration writ did not protect a sheriff in taking property from the possession of the owner who is not a party to the proceeding. In discussing that question, the court said:

"The history of our legislation shows that it was never allowable to take the property of a citizen from his possession without a proper proceeding against him, in which security was given for damages and costs which might result."

Again it was said, after reviewing former acts of the Legislature:

"The plain purpose of these provisions was to require a suit with a verified petition against, and a bond to, the person whose property was to be seized, before its seizure under any writ was authorized. * * * While a sworn petition may not be necessary, a suit is required, with an affidavit and bond which would meet the purposes of the former law. The sequestration law requires no bond to secure any person but the defendant. It authorizes the defendant, and no one else in the first instance, to give a replevy bond, and retain the property; and, if he fails to do so, it authorizes the plaintiff to . replevy. It provides for a sale of the property, if it be perishable, in case the defendant does not replevy. There is no provision whatever in this state for the protection of the rights of any but the parties to the suit. If it be true- that the officer is authorized to invade the possession of a stranger to the action, and take his property, it may be replevied by either party to the suit, or sold as perishable; and, in case of insolvency of the plaintiff, its owner would be left without substantial redress. In our opinion, the statute contemplates no such result. It requires the party desiring to sue for property to bring his action against him who holds it, and to direct his oath against him, and to make his bond payable to him. When he has complied with these requirements, he has entitled himself to a writ to take the property from the defendant for the purposes of preserving it or securing the fruits of the litigation pending the action; but he has not entitled himself, and therefore cannot require the officer, to take the property of any other person."

[3] If the sheriff is not protected in such case, certainly the plaintiffs, who directed the proceeding and had the property seized by such writ, would not be. If appellee had been a party to the former action, it is doubtless true, if he desired to attack to the sequestration proceeding as being wrongfully sued out, he would be required to negative the grounds stated in the affidavit and state his damages · occasioned by such wrongful act, and if he desired punitory damages he would have been required to allege in addition that it was willful, malicious, or the like, and without probable cause.

[4-7] This, however, is an action charging a trespass upon the appellee's rights by appellants, and to eject him from the premises in pursuance of a conspiracy, alleging that appellants used the sequestration proceeding to effect that purpose, and to deprive him of the protection Congress had thrown around him as a person in military service, through the Soldiers' and Sailors' Civil Relief Act.

216 S.W.—29

If these facts are true, he can recover his damages whether the grounds stated in the affidavit for sequestration are true or false. Every unauthorized entry upon the land of another is a trespass, and it is a willful trespass if intended and deliberate. Ripy v. Less, 55 Tex. Civ. App. 492, 118 S. W. 1084; McCauley v. McElroy, 199 S. W. 317. The allegations show a conscious disregard of appellee's rights by appellants and may be sufficient to sustain a verdict for exemplary damages. When real or personal property had been levied on by a writ of execution, attachment, sequestration, or other such writ, to which the claimant or owner is not a party, he may resort to his common-law remedy for the damages inflicted by seizure thereunder. Sparks v. Ponder, 42 Tex. Civ. App. 431, 94 S. W. 428; Lang v. Dougherty, 74 Tex. 226, 12 S. W. 29; Cross v. Hays, 73 Tex. 515, 11 S. W. 523; Simpson v. Lee, 34 S. W. 1053; Land v. Klein, 21 Tex. Civ. App. 3, 50 S. W. 638; Knox v. McElroy, 103 Tex. 357, 127 S. W. 798; Waggoner v. Wyatt, 43 Tex. Civ. App. 75, 94 S. W. 1076; Lamar v. Hildreth, 209 S. W. 167. It is our view that a cause of action was alleged whether or not the third proposition above mentioned is correct. Possibly it is not necessary to determine the question presented by the parties to this appeal with reference to the effect the Soldiers' and Sailors' Civil Relief Act has on the rights of the parties, since, as we conceive it, the petition in any event alleges a trespass.

But as this law may affect the question of damages, we have concluded to give our view on the matter presented. It will be perceived that appellee alleged as part of his cause of action that his rights come within the meaning of a contract for the purchase of real or personal property, as used in the act, and that Bassham knew appellee owned the property and was then in the military service, and that he attempted to exercise the right of option expressed in the notes, to declare all of them due on account of the nonpayment of certain .installments which fell due while appellee was in the service.

[8] It is appellants' contention that section 302, art. 3, of the act (U. S. Comp. St. § 3078¼ff), applies to all of that article and is not confined to section 302. Subdivision 1 of the section reads:

"The provisions of this section shall apply only to obligations originating prior to the date of approval of this act and secured by mortgage, trust deed, or other security in the nature of a mortgage upon real or personal property owned by a person in military service at the commencement of the period of the military service and still so owned by him."

It is evident this language means what it says. The provision of the section, which consists of three subdivisions and also sub-

heads a and b, are confined to obligations secured by mortgages, trust deeds, or other security in the nature of a mortgage, "upon real or personal property owned by a person in military service at the commencement of the period of military service and still so owned by him." The section does not purport to refer to other classes of obligations or rights named in article 3 of the act, such as leases or rental contracts, or contracts for the purchase of property which at the option of the vendor may be rescinded for nonpayment of installments of the purchase price. It is our view, if the appellee had been a party to the original suit, section 301 (U. S. Comp. St. § 3078¼f) would not have applied, as apparently is the contention of appellee. Subdivision 1 of section 301 is:

"No person who has received, or whose assignor has received, under a contract for the purchase of real or personal property, or of lease or bailment with a view to purchase of such property, a deposit or installment of the purchase price from a person or from the assignor of a person who, after the date of payment of such deposit or installment, has entered military service, shall exercise any right or option under such contract to rescind or terminate the contract or resume possession of the property for nonpayment of any installment falling due during the period of such military service, except by action in a court of competent jurisdiction."

[9] It is appellee's contention that, when a note or deed retains an express vendor's lien, under the holdings of the courts of this state the contract is executory, and the vendor, at his election, may rescind the contract. Summerhill v. Hanner, 72 Tex. 224, 9 S. W. 881. But in this case appellee does not allege that there was an express lien retained in the deed or notes, but, waiving that allegation, it is settled in this state, if the vendor brings a suit to foreclose the lien, he has elected to affirm the contract and rely upon his debt and his lien; such vendor, after such suit, stands in the position of a mortgagee. Gardener v. Griffith, 93 Tex. 355, 55 S. W. 314; Moon v. Sherwood, 180 S. W. 296. In this case the vendor, Bassham, sued the maker of the notes and to foreclose his lien. He did not exercise his option or offer to do so to rescind the contract. If he had desired to do so, as we understand the act, he was required to go into court, where upon hearing the court might have ordered "the repayment of prior installments or deposits or any part thereof, as a condition of terminating the contract and assuming possession." Or he could have ordered a stay of the proceedings unless he should find the defendant had the ability to comply with the terms of the contract.

[10, 11] The appellee in this case was not entitled to recover the prior payments or installments as part of his damages, which under the act a court before whom a rescission is sought might allow as a condition to rescind; in other words, prior payments, etc., are not the proper measure of the damages in this case. The appellee being the owner or part owner of the property, his rights as such fall under section 302. The obligation upon which suit was instituted and for which a foreclosure was sought originated prior to the approval of the Act March 8, 1918. Under this section the court could have made a stay of the proceedings, or such other disposition equitable to the parties. The fact that the maker of the note was sued, and that the father of appellee was his agent and in the house, or that his brother was a co-owner, would not affect his rights under the law. The right given him is personal to him. Hoffman v. Charleton, 231 Mass. 324, 121 N. E. 15. In subsection 3 the sale under a power of sale, or under a judgment upon warrant of an attorney to confess judgment contained in any such obligation, is invalid as to such soldier. By the act in question it was the manifest purpose of Congress to temporarily suspend legal proceedings and transactions which may prejudice the civil rights of persons in the service. To that end default judgments cannot be taken without a proper affidavit, and, if the person is in the service, an attorney must be appointed to represent him in any default, and after judgment it can be set aside by showing a meritorious defense. Howie Mining Co. v. McGary (D. C.) 256 Fed. 38. The court before whom an action is brought against a soldier has also the power to stay executions, attachments, and the like, as well also the power to vacate them. Sections 203, 204 (U. S. Comp. St. §§ 3078¼d, 3078¼dd). It appears to have been the purpose of Congress to place the civil rights of the person in the service under the supervision of the courts. It evidently was not the purpose to permit parties holding claims or obligations affecting such rights to act arbitrarily, or to enforce liens without those rights being considered by the court, or to seize the property of the soldier by ancillary or harsh writs, and to dispossess the soldiers, or their agents, without giving the courts which Congress had constituted and authorized an opportunity to protect, and prevent prejudice to such rights. We think all these matters may be looked to in ascertaining the motive and animus of appellants in this case. By their act they may have deprived the soldier of the protection from the courts as to his rights to which he was entitled. If the land is not sold or foreclosed, he may yet tender the money and redeem the land. It may be that the court before which the foreclosure was or is pending, upon proper equitable showing, could have set aside the option to advance the due date of the notes. However, it is not our purpose

to hold he could have done so. The matter is only suggested. The propositions under the first assignment will be overruled.

[12] The second, sixth, and tenth assignments present error with reference to the allegations in the petition and instruction of the court relating to mental anguish as an item of damage. The appellee objects to the consideration of these assignments because not properly briefed. We find the objections are well taken, but conclude to consider the case under the assignments, as we believe they call attention to fundamental error apparent of record. It will be observed that the plaintiff, by his petition, did not sue for exemplary damages, as such, but sought to recover mental anguish as actual damages, occasioned by wrongful trespass upon the property. The trial court instructed the jury:

"Mental anguish is such mental suffering, pain, and distress of mind, if any, that the plaintiff may have sustained as the proximate result of defendant's acts in this case complained of."

And submitted the special issue:

"What amount, if any, do you allow plaintiff for the mental anguish, if any, suffered by him, if any, as the proximate result of defendant's acts?"

The jury answered this issue: "$1,000." Our Supreme Court, we think, has settled this question in the case of Crawford v. Doggett, 82 Tex. 139, 17 S. W. 929, 27 Am. St. Rep. 859, in which damages were claimed for the wrongful sequestration of land upon which plaintiff and his family resided, and by the writ were dispossessed. The court there said:

"So much of the charge as instructed the jury that injury to the plaintiff's feelings was an element of actual damages is assigned as error, and we think the assignment well taken. In the case of Trawick v. Martin Brown Co., 79 Tex. 460, 14 S. W. 564, after mature consideration. this court held that injury to feelings could not be recovered in a suit for wrongfully suing out an attachment; but that, if the writ were maliciously issued, and exemplary damages were recoverable, distress of mind produced by it was proper to be considered by the jury in assessing such damages." Williams v. Yoe, 19 Tex. Civ. App. 281, 46 S. W. 659; Railway Co. v. Trott, 86 Tex. 412, 25 S. W. 419, 40 Am. St. Rep. 866; Malin v. McCutcheon, 33 Tex. Civ. App. 387, 76 S. W. 586; Morris v. Williford, 70 S. W. 228; Evans v. Kingsbury, 25 S. W. 729; Dunn v. Wilkerson, 203 S. W. 59, and authorities cited.

[13] In allowing exemplary damages, our Supreme Court has said there is much confusion as to the grounds upon which they are allowed. Our decisions recognize the rule that exemplary damages are allowed as a matter of punishment but at the same time, when a proper case is made, permit the jury, in assessing their amount, to take into consideration damages too remote to be considered strictly compensatory. Mayer v. Duke, 72 Tex. 445, 10 S. W. 565. In order to recover such damages, "the act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence —such disregard of another's right—as is deemed equivalent to such intent; and, where the bad intent is not a necessary inference from the act charged, it must be alleged." Connor v. Sewell, 90 Tex. 275, 38 S. W. 35. It may be that the allegations of the petition are sufficient to charge a willful or evil intent, and a gross disregard of the appellee's rights; but the mental anguish as alleged is confined to actual damages. It is alleged:

"He has suffered mental distress on account of his being deprived of the use of the said building for his said mother and father." That he has been damaged in a sum equal to the rental value, and for the sum paid upon the premises, and all such damages being $5,000.

[14] The court treated such mental suffering as the proximate result of being deprived of the use of the house. Mental suffering in such case is not considered by our courts as the proximate result of an act, but as being a remote contingency, and not the necessary result of such an act. The allegation as made and the prayer in this case will not support a recovery for exemplary damages under which mental distress can only be recovered in this character of case. Harmon v. Callahan, 35 S. W. 705; Railway Co. v. Le Gierse, 51 Tex. 189, 203.

[15-17] There is no assignment assailing the allegation of the recovery of the money paid on the purchase of the property, or to the charge of the court authorizing such recovery, or to the verdict of the jury for the money paid Van Zandt, as the cash consideration on the purchase price, or for the payment of the monthly notes. Manifestly, appellee could not recover such sum of money. This is not the measure of his damages; he could only recover the value of the use of the house and lot and any special damages the property may have received. Estes v. Browning, 11 Tex. 237, 60 Am. Dec. 238; Banks v. McQuatters, 57 S. W. 334; Lipscomb v. Fuqua, 103 Tex. 585, 131 S. W. 1061. We do not think this case comes within section 301 of the Soldiers' and Sailors' Civil Relief Act, which authorizes a court, where the vendor or grantor seeks in the court to rescind a contract of sale for nonpayment of installments, and "upon hearing of such action the court may order the repayment of prior installments." This provision does not in this case give the measure of damages as hereinbefore pointed out. The furniture and the like, in the building, being personal property, we suggest possibly the appellee could treat the seizure under

the writ as a conversion and recover the value of such personal property at the time of its seizure. We only suggest this as the case will be reversed. Norwood v. Inter-State National Bank, 92 Tex. 268, 48 S. W. 3. We also suggest in this case, as appellee's brother was a co-owner of the property, that both should have joined in this action; but in the absence of a plea in abatement the plaintiff may have recovered only in proportion to his interest. Ry. Co. v. Cusenberry, 86 Tex. 525, 26 S. W. 43.

[18] The assignments complaining of the admission of the sequestration proceedings are overruled. We think they were properly admitted.

The judgment will be reversed for the reasons stated.