J. J. LANG ET AL. V. F. M. DOUGHERTY ET AL.

No. 6070.

1. **Trial of Right to Personal Property.**—A party whose property may be seized under attachment is not required to seek relief under the statute by claim bond and oath, but may sue for the taking and conversion.

2. **Evidence.**—The maker of a bill of sale not having witnesses is a competent witness to prove its execution.

3. **Evidence—Relevancy.**—It was competent to admit in evidence as a link in his title a bill of sale executed to plaintiff for a given number of cattle in a stock as a share proportional to the entire stock—having further proved a delivery of specific cattle in a settlement of his claim under the bill of sale.

4. **Competency—Evidence.**—There being an issue of fraud in the conveyance to the defendant by reason of alleged fraudulent preference of the defendant by an insolvent vendor, it is competent to prove the vendor's settlement with other creditors in cattle at $20 per head and the refusal of a settlement at the same rate by the party attacking.

5. **Relevancy.**—In support of the title of plaintiff it was competent to show a conveyance by the common vendor to a third party, reserving the cattle conveyed theretofore to the plaintiff.

6. **Insolvent Corporation May Adjust and Pay Claims.**—When a coropration becomes insolvent and ceases to carry on the business for which it was organized its assets become a common fund for the payment of debts ratably among its creditors. Equity will interpose to prevent unjust preferences. Payments made in assets if at reasonable value are valid and no evidence of fraud.

7. **Shareholders as Creditors.**—No distinction is made as to creditors who are shareholders if their shares are paid up. They have the same rights as other creditors if not in arrears for unpaid shares of stock.

8. **Same—Attack Upon an Adjustment.**—A creditor levied upon cattle to satisfy a debt against an insolvent cattle company. The cattle were shown to have been delivered to certain other creditors of the insolvent company. *Held*, that to set aside the preference made it must be shown that more than enough property had been so taken than was required to satisfy the debts for which it was given, at a reasonable valuation.

9. **Settling up Insolvent Corporations.**—If an insolvent company should attempt an unjust apportionment of its property among its creditors the remedy of the complaining creditor is to apply to the courts of equity and have a receiver appointed, etc.

10. **Commingling Cattle.**—A charge that ownership of cattle was acquired by a sheriff herding cattle of plaintiff with others so that the identity of the individuals in the herd was lost became unimportant when by other undisputed testimony the identity of the entire herd claimed was established.

**11. Pleading—Values.**—The petition for recovery of a number of cattle (935 head) alleged that they were taken by the defendant on October 9, 1885, and were then of value of sixteen dollars each. The suit was filed October 22, and it was alleged further that the cattle by reason of bad treatment received were worth only $12.50 each, and damages by such depreciation $3275.00. Prayer for the cattle and damages and general relief. *Held*, that a verdict for 666 head of cattle at $16 each (a remittitur in the number and one dollar each in value being made) was supported by the allegations of value in the petition.

**12. Judgment in Suits for Personal Property.**—The judgment properly provided for the return of the cattle at the valuation fixed. In suits for specific property the judgment should be for the recovery of the property or its value.

**13. Sequestration—Bond.**—A writ of sequestration for a herd of cattle was levied upon the cattle while in the possession of one not the defendant in the writ. The sheriff took from the party in whose possession he found the cattle a bond conditioned that the defendant would return them, etc. *Held*, that no judgment against the sureties to the bond could be entered. It was not a claim nor replevy bond.

**14. Cotrespassers.**—See facts where parties by their acts were held cotrespassers and jointly liable for the cattle taken and retained.

APPEAL from Wichita. Tried below before Hon. B. F. Williams. The opinion states the case.

*Donald & Cobb* and *Hogsett & Greene,* for appellants. — 1. The statute for the trial of the right of property gives to a claimant the right to recover specific property while in custody of the law, and provides the exclusive remedy for the recovery of property levied upon and held by an officer under execution against a person other than the claimant, and an action of sequestration will not lie in such case. Rev. Stats., arts. 4822–25, 4489; Howeth v. Mills, 19 Texas, 296; Raysor v. Reed & Smith, 55 Texas, 271; Whitman v. Willis, 51 Texas, 426; Ferguson v. Herring, 49 Texas, 129; Carter v. Carter, 36 Texas, 693; Vickery v. Ward, 2 Texas, 212.

2. The bill of sale from the Stone Cattle and Pasture Company to Dougherty was improperly admitted in evidence. (1) The *allegata* and *probata* must agree. (2) In order to make a valid sale and transfer of cattle on the range there must be a bill of sale and it recorded. Rev. Stats., arts. 4562–64.

3. The charge of the court submitting the values and damages was not authorized by the pleadings. Love v. Wyatt, 19 Texas, 312; Dodd v. Arnold, 28 Texas, 97; Cain v. Thomas, 25 Texas, 581; Railway v. Terry, 42 Texas, 451.

4. Stockholders or officers of an insolvent corporation can not secure any advantage or preference in the payment of their claims at the expense of other creditors. This principle was ignored in the charges. Mora. Priv. Corp., sec. 579; Drury v. Cross, 7 Wall., 302; Jackson v. Ludeling, 21 Wall., 616; Smith v. Lansing, 22 N. Y., 521; Railway v. Bee, 48 Cal., 398; Richards v. Insurance Co., 43 N. H., 263.

5. An insolvent corporation which has ceased to do business and com-

menced to wind up has no right to prefer one creditor to another. Mora. Priv. Corp., secs. 581–83; Robbins v. Embry, 1 Sm. & M. Ch., 207, 258, 264; Richards v. Insurance Co., 43 N. H., 263; Hightower v. Mustain, 8 Ga., 506.

6. There is no authority of law for any one except a party to the suit to give a replevin bond. Rev. Stats., arts. 4498, 4505. An officer in possession of property has no right to require a party claiming the same to give a bond unauthorized by law as a condition of the delivery of such property to him, and a bond given under such circumstances is void. Wootters v. Smith, 56 Texas, 210; Leona I. M. & C. Co. v. Roberts, 62 Texas, 618.

*Davis & Garnett,* for appellees. — 1. The fact that at the time the sequestration was sued out the sheriff of Wichita County held the cattle by virtue of a levy of an execution in favor of appellant Lang v. Stone Cattle and Pasture Company, is irrelevant and immaterial, the cattle having been released from the custody of said sheriff before the execution of said sequestration. Moore v. Gammel, 13 Texas, 121; Hardy v. Broaddus, 35 Texas, 668.

2. The bill of sale from the Stone Cattle and Pasture Company to F. M. Dougherty was admissible.

3. A corporation, like an individual, can pay its debts in property or money, whether its debts were originally due to its stockholders or not; and a creditor who advises a corporation to pay its debts in cattle at the rate of $20 per head when they are not worth exceeding $15, and who is seeking to obtain payment of his debt in full, and is not seeking to have the assets of the concern equitably pro rated among all the creditors, can not take from the creditors the cattle which they have taken on their debts at $20 per head and deprive them of anything while he obtains satisfaction in full. Burr. on Ass., p. 615; Mora. on Corp., sec. 802; Arthur v. Bank of Vicksburg, 9 Sm. & M., 394; Dana v. The Bank, 5 Watts & Serg., 223; Duruyter v. Trustees St. Peters Church, 3 Barb., 125; Twinlick Oil Co. v. Marbury, 91 U. S., 587.

4. The plaintiffs were entitled to judgment for the alleged value of their cattle at the time of their conversion by the original defendants or at the time of the trial. Rev. Stats., art. 4501.

5. In suing for cattle it is sufficient for the plaintiff to allege that he is the owner without showing how he became the owner, and the allegation can be supported by any evidence tending to show ownership.

COLLARD, JUDGE.—When a claimant of personal property levied on by execution, attachment, sequestration, or other such writ, as the property of another, resorts to his statutory remedy to try the right to the property he thereby waives his privilege of suit at common law. Vickery

v. Ward, 2 Texas, 212.   But he is not compelled to adopt the statutory remedy.   It is simple and less expensive than a suit, and is the better practice when applicable, but he "may interpose his claim under the statute, or he may resort to his common law right and sue the sheriff or the plaintiff, if the plaintiff had caused the seizure to be made."   Moore v. Gammell, 13 Texas, 122.   He might not be allowed to intervene in an attachment suit without complying with the statute by filing oath and bond, as was decided in Carter v. Carter, 36 Texas, 693; and he could not enjoin a sale under execution because of his legal remedy, as was decided in Ferguson v. Herring, 49 Texas, 129; but he would not be forced to seek relief under the statute.

So we conclude the law is against appellants' assignments of error on this point.

One of appellants' objections to the ruling of the court admitting in evidence the bill of sale by the Stone Cattle and Pasture Company to Dougherty, was that it was proved only by the grantee.   We think the grantee was a competent witness to prove its execution, there being no subscribing witnesses to it.   Rev. Stats., art. 2246; 1 Greenl. on Ev., sec. 575; Meuley v. Zeigler, 23 Texas, 88.

It is further objected that it was inadmissible (1) because plaintiffs sue for 935 head of specific cattle, while the bill of sale purports to convey only an undivided interest in the cattle; (2) because it conveys an interest in cattle to Dougherty alone, while plaintiffs set up a joint interest in the cattle; (3) because the description in the bill of sale varies from the description in the petition.   To properly consider these objections it will be necessary to notice some other facts.   The company had a large stock of cattle, and under the bill of sale Dougherty was entitled to an undivided interest of 563 head of them.   There was an agreement between the company and Robertson (plaintiff) that to pay a claim he held against it he was to have of these cattle enough to pay his claim at $20 per head. Dougherty and Robertson authorized one Beattie to receive the cattle for them.   He received the cattle from the company without designating which were for Dougherty and which were for Robertson, intending to drive them to Cooke County and there divide them when the owners could be present.   In this way he had received 471 head of cattle for his principals, when the sheriff seized them under execution in favor of defendant Lang, when the sheriff proceeded to levy upon other cattle of the company, making the whole number levied on 649 head.

It was then agreed by all the parties except Lang that Robertson and Dougherty should take the cattle so seized as part of the cattle contracted to them.   So then it appears that as to these cattle there was a partition between Dougherty and the company, and such a partition as made Dougherty and Robertson joint owners of the 649 head.   So it follows that if Dougherty and Robertson had a right to sue for the cattle at all

they could sue as joint owners and for these cattle so partitioned to them and taken by them under their agreements.

It was not in proof that Robertson was to receive cattle in any particular brand. Under the bill of sale to Dougherty he was to have cattle in the "T" brand, and it appears that most of the cattle levied on by the sheriff were in this brand; but if they were in other brands it would be immaterial, because in a division with the company he had the right to receive cattle in other brands if the company chose to deliver them to him, provided such an arrangement did not interfere with Lang's rights under the levy. His bill of sale was evidence of the fact that the company had sold him 563 head of cattle, and it was admissible for that purpose notwithstanding other brands of cattle were delivered to him in the partition. It would then be immaterial that the bill of sale described cattle not described in the petition. The bill of sale was a link in his title, which he had the right to put in evidence, and then show, if he could, that he received in settlement of it such cattle as it described and others as were described in his petition, provided he did not by so doing interfere with any right of Lang under his levy. Such a settlement did not in fact interfere with any right of Lang under his levy or with the rights of Waggoner, the purchaser at the execution sale, because after this the court from which Lang's execution issued, on motion of the defendant therein, the Stone Cattle and Pasture Company, all the parties appearing, vacated the execution and set aside the sale, in which judgment of the court both Lang and Waggoner acquiesced, Lang suing out an *alias* execution and Waggoner disclaiming all rights under his purchase. Lang's subsequent levy upon the same cattle could not relate back to his first levy so as to affect the division of the cattle between the plaintiffs and the company.

It is claimed that the court erred in admitting evidence of J. W. Sacra, vice-president of the company, that after the rendition of the judgment in favor of Lang against the company and before the issuance of execution thereon the company offered to pay the judgment in cattle at $20 per head, but Lang refused the offer, stating that he wanted his money; that witness told Lang other creditors were agreeing to accept cattle in satisfaction of their debts at $20 per head, and that Lang replied that that was a good trade and advised witness to make as many trades of that kind as he could. Also that the court erred in admitting evidence of witness Babb that he had been a creditor of the company, and that early in September, 1885, before Lang's first levy, he accepted the offer of the company to pay him cattle at $20 per head, and that at the same time the company sent word to Lang by witness to come and get cattle on his debt at the same rate; that he delivered the message, and Lang replied that he did not want cattle but intended to have his money.

There was no error in admitting the evidence. It was admissible un-

der Lang's allegations of fraud charging the company with illegally preferring the debts held by Dougherty and Robertson and conveying to them cattle in payment of their debts. The company was insolvent and was winding up its affairs; it had passed a resolution to pay its debts in cattle at $20 per head and land at a certain price above its real value, and it was legitimate to show that all creditors were treated alike, and especially to show that no advantage was given to other creditors over Lang; that the same offer was made to him as to others, and that he refused, and to show that he advised the company to so settle its debts.

A bill of sale by the company on the 26th day of September, 1885, to W. S. Woods for all the cattle belonging to the company with certain reservations, among which was a reservation of the cattle conveyed to Dougherty and Robertson, was admitted in evidence over defendant's objections.

There was no error in this ruling. After Lang's first levy upon the 471 head of cattle delivered to Beatty for Dougherty and Robertson, the sheriff took into his possession and levied on other cattle as the property of the company, making the whole numbered levied on 649 head. It was proved that Woods agreed with the plaintiffs and the company that plaintiffs should take all the cattle so levied on under agreement of the company with them. The evidence was admissible to show Woods' authority to make this agreement and the legal effect of his recognition of plaintiffs' right to the specific 649 head of cattle levied on.

Appellants complain of special charges of the court given at request of plaintiffs to the effect that the Stone Cattle and Pasture Company, a private corporation, could owe a debt to one of its shareholders and could legally pay the same in like manner as any other debt, and could legally prefer such debts as well as others in assets of the company, provided the property was taken at a fair price, and provided the debts were not overpaid. The objection to these instructions is that they do not apply to insolvent corporations.

This company was insolvent, had ceased to do business, and was winding up all its affairs. To do this it proposed to its creditors to pay them in cattle and land at certain rates above value. This offer was made to defendant Lang, and he refused to accept. Other creditors accepted the offer, among them plaintiffs Dougherty and Robertson, who received the property levied on by Lang's execution in part satisfaction of the claims held by them. These debts were originally contracted to stockholders, and the evidence tends to show that the vice-president of the company, Sacra, who was also a shareholder, had some remaining interest in the notes held by Dougherty.

It has been held that an insolvent corporation can prefer its creditors, but the better opinion is that equity will not sustain an unequal distribution of the assets. When a corporation becomes insolvent and ceases to carry on the business for which it was organized its assets become a

common fund for the payment of debts ratably among its creditors. If there is not sufficient property to pay all the debts in full it must be distributed equally and fairly among the creditors according to their respective rights, so as not to pay one more than his ratable share. Equity will interfere to prevent unjust preferences. 2 Mora. on Priv. Corp., secs. 802, 803; see also Railway Co. v. Bee, 48 Cal., 308; Richards v. Insurance Co., 43 N. H., 263; Jackson v. Ludeling, 21 Wall., 616; Hightower v. Mustian, 8 Ga., 506.

No distinction is made as to creditors who are shareholders if their shares are paid up. Shareholders are not liable for the debts of the corporation. They have the same rights as other creditors if not in arrears for unpaid shares. If they are in arrears they can be compelled to pay the amount so due, and then if they have debts they are entitled to their distributive portions of the assets of the insolvent company. 2 Mora. Priv. Corp., secs. 861, 862.

The court below could not apply these principles relating to insolvent corporations to the case before it. Lang was not before the court asking for an equitable distribution of the assets of the company. He had not applied to the equity powers of the court for relief against an improper preference of other creditors. He relied solely upon his claim to subject the property to the payment of his debt by virtue of the levy of his execution. In such case, if he was unable to show that plaintiffs had received more property of the company than enough to satisfy their debts at a fair valuation, he was entitled to no relief. His defense for interfering with the settlement made by the officers of the corporation rested upon his ability to show that property had been delivered to plaintiffs that was subject to his levy, not upon the rights of a creditor to have the property prorated among all the creditors. He was himself attempting to enforce the payment of his debt to the disadvantage and exclusion of other creditors. 2 Mora. on Priv. Corp., sec. 863.

He refused to accept the mode of settlement proposed by the insolvent company and attempted the collection of his debt by execution. If the company was making an unfair and inequitable adjustment among creditors or preferring creditors to his disadvantage, his remedy was to invoke equity and have a receiver appointed. There was no error in the charges of the court as specified in the assignments of error upon this subject.

The court charged the jury as follows:

"When one person wrongfully takes cattle of another and places them with other cattle so that the true owner can not identify his property, the burden is upon the wrongdoer to separate and identify the cattle, and unless he does so the true owner is entitled to recover not only his own cattle but the cattle with which his own is commingled."

This charge is assigned as error. It was intended to apply to that part of the evidence which plaintiffs say shows that after the sheriff had levied

on the 471 head of cattle that had been received by the plaintiffs he afterwards levied on other cattle of the company in the same brands and mixed them, and so rendered it impossible to identify the 471 head. The principle contained in the charge is correct, but whether it should have been given in this case it is not necessary to decide, because after the sheriff had so levied on and mixed the cattle, it was agreed between plaintiffs, the company, and Woods (the owner of the residue after plaintiffs' number had been taken out) that the entire lot in the hands of the sheriff, 649 head, should be taken by plaintiffs under their agreement of settlement, the execution, the levy, and the sale all being afterwards vacated and set aside by the court. Lang acquired no rights by this levy, nor did Waggoner, the purchaser at the sale thereunder. It was abandoned by the parties. So the question as to the identity and ownership by mixing is unimportant.

The court in the next paragraph of the charge given, correctly instructed the jury as to the ownership of plaintiffs under the agreement made after the levy. The abstract charge as to commingling the cattle could have had no effect, as plaintiffs' ownership was established by an undisputed agreement. These remarks will apply to appellants' twenty-third assignment of errors, which also relates to the mixing of the cattle and failure of plaintiffs to plead title by such mixing. Plaintiffs did not and were not bound to plead their title, and we have seen it did not depend upon a wrongful mixing, but upon a positive agreement.

Plaintiffs' amended original and first supplemental petition sets up that defendants wrongfully took possession of the cattle, 935 head, on the 9th day of October, 1885, at which time they were worth on an average $16 per head; that by bad treatment while in the hands of defendants the cattle depreciated in value so that at the time the suit was brought on the 22d day of October, 1885, they were worth only $12.50 per head; that by such depreciation plaintiffs were damaged in the sum of $3275.50. The prayer was for recovery of the cattle and the damages aforesaid, and for general relief. The verdict of the jury under the charge of the court was for plaintiff for 666 head of cattle at $16 per head, whereupon judgment was rendered, reciting among other things that plaintiffs' writ of sequestration had been levied on the cattle, and that they were "replevied by defendant Waggoner, and left in his possession upon his executing a replevin bond in the sum of $16,874, with L. C. Mayes and the defendants Lang and Cobb as his sureties, payable and conditioned as prescribed by law." It then proceeded to give judgment for plaintiffs against Lang, Cobb, Waggoner, and Mayes, jointly and severally, "for $9735, the value of said cattle at fifteen dollars per head," thus estimating the cattle at 649 head at $15 per head, according to remittitur entered by plaintiffs. The judgment provided that if the cattle and their increase were returned to plaint-

iffs within ten days they should be credited on the judgment at $15 per head.

The appellants insist that the verdict should be set aside because there was no evidence that 666 head of cattle had been seized.    To this it may be said in reply, the remittitur cured the error.    They also say the suit was for the cattle, alleged to be worth $12.50 per head, and $3.50 damages to the cattle, and the jury found the value of the cattle to be $16 per head, which verdict they say was unauthorized by the pleadings. The petition alleged that the cattle were worth at the time of seizure $16 per head; the evidence showed that at such time they were worth $15 to $16 per head.    Under the allegations of the petition it was proper for the jury to find the value of the cattle at the time of seizure; the value so found was not in excess of the value claimed in the petition or in excess of the highest value shown by the proof.    The judgment was for so much money as 649 head of cattle were worth at $15 per head, curing any error there might be in the verdict under the proof.    The judgment properly provided for the return of the cattle to plaintiffs at $15 per head.    This cured any error in the form of the judgment under a claim that it should have been for the cattle or their value at the time suit was brought and for damages for injury to them while in defendants' possession.    In a suit for specific property judgment should be for the recovery of the property or its value.    Morris, v. Coburn, 9 S. W. Rep., 345; Blakeley's Admr. v. Duncan, 4 Texas, 184; Cheatham v. Riddle, 8 Texas, 168; 29 Texas, 450.

W. T. Waggoner, who was not a party to the suit at the time plaintiffs' writ of. sequestration was levied, was in possession of the 649 head of cattle, having purchased them at the sheriff's sale under Lang's first levy. The sheriff allowed him to retain possession upon executing what is termed by the parties a replevy bond in the sum of $13,000, with Lang, Cobb, and Mayes as sureties, "conditioned that if defendant is condemned in the above entitled action (F. M. Dougherty et al. v. J. J. Lang et al.) he or some other person will return the above described property or its value to satisfy the judgment which may be rendered against him, together with interest thereon from date."    This bond is signed by J. J. Lang, J. H. Cobb (by J. J. Lang), then by W. T. Waggoner, and L. C. Mayes.    The style of the suit is first given and the bond is made payable to plaintiff "F. M. Dougherty et al."    We do not know whether this instrument was intended for a replevy bond or the bond of a claimant for the trial of the right of property.    Waggoner could not replevy, not being a party to the suit, and he made no claim to the property under oath as required by law, nor does the bond indicate that he is claiming it.    The condition of the bond is that the *defendant* is to return the property, not Waggoner.    This is altogether an anomalous proceeding; the sheriff levies a writ of sequestration in the possession of one not a party defendant or in anywise connected with the suit and allows him to

retain possession of the property upon giving bond that the defendant shall return it. Such a proceeding is unknown to the law. Upon this bond the court rendered a summary judgment as upon a claimant's bond or a replevy bond. This the court had no power to do. It was not declared on and could not be in this suit, because there could be no breach of its conditions until this suit was at an end.

After Waggoner was so allowed to retain possession of the cattle he was made a party defendant by plaintiffs and was charged to be liable as a cotrespasser with Lang and Cobb. This he was, as a consequence of his unwarranted interference with the levy of the sequestration, aiding Lang to hold the cattle for his second levy and final conversion; but the bond not being a statutory bond the court could not render a summary judgment thereon, as might have been done had Lang replevied the cattle. The evidence does not show that J. H. Cobb was a cotrespasser with Lang, hence no judgment could be rendered against him as such. We find there was error in rendering judgment on the bond and that it should be set aside, without prejudice to plaintiffs' right to sue upon it hereafter if its conditions should be broken.

The language used by counsel in argument was not authorized by the evidence, but we are not prepared to say from our standpoint that it prejudiced the jury against Lang. There was evidence to support the verdict as to the value of the cattle, and there is ample evidence to show that there were 649 head of cattle taken by Lang and Waggoner. The jury found that there were 666 head so taken; it does not appear but that this was a mere mistake in making the estimate. The trial judge had superior opportunities to any we have to determine the effect of the language used. We can not say his decision was wrong in overruling the motion for a new trial upon this ground. The evidence sustained the verdict that Lang and Waggoner were cotrespassers, that there was no fraud in the sale to plaintiffs, and that the cattle were not subject to Lang's execution.

We think judgment should be here rendered upon the verdict and remittitur such as should have been rendered by the court below, viz., that appellees, plaintiffs below, F. M. Dougherty and Al Robertson should recover of appellants the 649 head of cattle upon which plaintiffs' writ of sequestration was levied as described by the return of the sheriff thereon and as described in plaintiffs' petition, and all costs incurred in the District Court; and if the cattle can not be forthwith had that the appellees recover of appellants Lang and Waggoner the sum of nine thousand seven hundred and thirty-five dollars, the value thereof as assessed by the jury after deducting amount remitted, and eight per cent interest per annum thereon from the 14th day of May, 1886, the date of the rendition of the judgment below, and all costs in the District Court. The defendants J. H. Cobb and L. C. Mayes should be dismissed from the suit

with their costs in the District Court.    Appellees should be adjudged to pay all costs of this appeal.

*Reformed and rendered.*

Adopted June 4, 1889.

Motion for rehearing overruled.

*Donald & Cobb, Hogsett & Greene,* and *Terrell & Walker,* for motion.

*Davis & Garnett,* resisting.