## CLEVELAND STATE BANK et al. v. TUR-
NER.   (No. 1293.)

(Court of Civil Appeal of Texas.   Beaumont.
Dec. 9, 1925.)

**1. Appeal and error ☞1193(9)—Petition in
suit for damages will be held good on appeal
if it was good as against a general demurrer.**

In determining on appeal whether cross-
petition was so fundamentally defective in its
allegations as to damages as to be insufficient to
support recovery, cross-petition, not challenged
by demurrer or special exception, will be held
good if it was good as against a general de-
murrer.

**2. Sequestration ☞21—Allegations of damages
in bill held good as against general demurrer.**

Allegations of damages in cross-bill seeking
to recover damages of $15 per head for injury
to cattle during wrongful sequestration in fore-
closure suit *held* good as against a general de-
murrer.

**3. Sequestration ☞21—Mortgagees suing out
writ of sequestration liable for damages aris-
ing out of unlawful issuance.**

Under Vernon's Sayles' Ann. Civ. St. 1914,
art. 7097, chattel mortgagees who wrongfully
sued out writ of sequestration are liable for
damages which occurred while property was in
hands of officer executing the writ.

**4. Process ☞168—Litigants generally liable
for damages to property under process wrong-
fully sued out.**

Litigants are generally liable for damages
to property seized under process wrongfully
sued out.

**5. Appeal and error ☞218(2)—Objections not
made in· trial court to form or substance of
charge are waived.**

Under Vernon's Sayles' Ann. Civ. St. 1914,
art. 1971, where no exceptions or objections
were made in trial court to charge submitting
separate and distinct subjects in one question
with instructions to answer yes or no, all objec-
tions were waived.

**6. Appeal and error ☞215(1), 928(1)—Par-
ties must be held to have approved charge
where no objections were taken in trial court.**

It is presumed that trial judge prepared
charge and presented it to parties and gave rea-
sonable time to present objections, and in ab-
sence of objection parties are deemed to have
approved it.

**7. Sequestration ☞21—Charge held not preju-
dicial against mortgagee in action for unlaw-
ful sequestration.**

In suit for unlawful sequestration of mort-
gaged property, question whether mortgagee
concluded in good faith and on reasonable
grounds that property was being neglected,
injured, abandoned, or otherwise mistreated or
handled by mortgagor so as to impair security,
*held* not prejudicial to mortgagee.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**8. Sequestration ⬯21—Refusal to set aside verdict on ground upon which jury had found on special issue held proper.**

In suit for unlawful sequestration of mortgaged property, refusal to set aside verdict on ground that mortgagor had neglected property to such extent that mortgagee in good faith believed security was being impaired *held* proper, where jury had found against mortgagee on such issue.

**9. Sequestration ⬯21—Good faith of mortgagee in procuring writ of sequestration would avail only against exemplary damages.**

If grounds upon which mortgagees secured writ of sequestration were false or untrue, good faith would avail them only as against exemplary damages, not as to actual damages.

**10. Sequestration ⬯21—Whether mortgagee taking charge of mortgaged property acted in good faith is for jury.**

Where mortgage authorized mortgagees to declare note due and take charge of property upon existence of certain facts, right to do so must as matter of law be exercised only upon good faith and on reasonable grounds, and whether act was in good faith is for jury.

**11. Sequestration ⬯21 — Proof of intrinsic value of cattle unlawfully taken on writ can be made where there is no market value.**

In suit against mortgagee for unlawful sequestration of cattle, proof of market value is admissible under general allegation of value; and, if there was no market value at time and place of seizure and return, then proof of intrinsic value could be made.

**12. Sequestration ⬯21—Measure of damages for unlawful taking of cattle for which there was no market value is difference between intrinsic and reasonable value at time of taking and return.**

Where there was no market value for cattle taken unlawfully under writ of sequestration by mortgagee, measure of damages was difference between intrinsic or reasonable value at time and place where they were seized and same value at time of their return.

**13. Sequestration ⬯21—Verdict held not grossly excessive or result of passion and prejudice on part of jury.**

Verdict for damages to cattle unlawfully taken by mortgagee on writ of sequestration, mistake or miscalculation of which was covered by a remittitur, *held* not grossly excessive, or influenced by passion and prejudice on part of jury.

Appeal from District Court, Liberty County; J. M. Combs, Judge.

Suit by the Cleveland State Bank and others against W. R. Turner, wherein defendant reconvened for damages. From a judgment for defendant, plaintiffs appeal. Affirmed.

Stevens & Stevens, of Houston, E. W. Love, of Cleveland, and W. L. Hill and John C. Randolph, both of Houston, for appellants.

H. S. Lilley, of Cold Springs, A. L. Kayser, of Conroe, and P. C. Matthews, of Liberty, for appellee.

O'QUINN, J. The Cleveland State Bank sued W. R. Turner on a note for $6,331.55, and to foreclose a mortgage on certain cattle given to secure the payment of the note. The suit was brought before the maturity of the note, on the ground (stated in their affidavit for writ of sequestration) that the security given to secure the payment of the note was being neglected and injured by Turner so as to impair the bank's security. A writ of sequestration was issued and levied upon some of Turner's cattle. At the maturity of the note, Turner paid same and the bank released the cattle which it had sequestrated, with the exception of some that had died and some that had escaped and were lost. Turner then reconvened for damages in the suit brought by the bank, and on the trial of the case the jury found for Turner in the sum of $3,165.77. Turner filed a remittitur for $250. Judgment was rendered for Turner, the bank's motion for a new trial was overruled, and the case is before us on appeal.

Before presenting the matters assigned as errors, as shown by their motion for a new trial, appellants urge three assignments asserted to be fundamental, and apparent upon the face of the record. The first is:

"The cross-bill of W. R. Turner, in so far as it seeks to recover damages for injury for $15 per head for 212 head of cattle is insufficient in law to state a cause of action, and is insufficient to support a judgment of the court, for the reason that the allegations of said cross-bill that 212 head of cattle were damaged in the sum of $15 a head is not competent as a basis for a judgment of the court, because the measure of damages, if any, for the seizure of the cattle, was the difference between the market value of the cattle at the time seized and at the time returned, or at the time sold by Turner; and such damage being in the nature of special damage must be specially pleaded, and there is no pleading upon which to base a verdict and judgment."

The allegations in the cross-bill complained of are:

"That said writ so issued by said parties and the bank as aforesaid was directed to the sheriff of San Jacinto (county), Tex., and they wrongfully and unlawfully, maliciously and fraudulently caused and procured thereunder the taking and conversion without the consent of this defendant of 230 head of cattle belonging to this defendant upon the range in said county and which were of the reasonable and market value of $25 per head. That said cattle so taken as aforesaid were with the consent and connivance and suggestion of the bank and said parties removed a great distance from their said range, to wit, out of San Jacinto county and into Liberty county, and there placed and held upon insufficient pasturage, and were frequently dipped while in a weak con-

dition by reason of such insufficient care and having been driven said great distance aforesaid, and were otherwise mistreated and neglected by said bank and said other defendants named herein. All of said acts in reference to said cattle so procured to be taken were done and performed by the said bank and the other parties named herein, and with the knowledge and consent and under and by their direction and under and by reason of said wrongful and illegal writ of sequestration aforesaid, and under their pretended rights under said mortgage aforesaid.

"That by reason of the gathering and taking and the handling and the moving and the dipping of said cattle as aforesaid and the insufficient pasturage upon which they were placed in Liberty county upon their removal, said cattle were greatly injured and damaged, to wit, in the sum of $15 per head.

"That when said note became due on the 24th day of January, 1923, this defendant promptly paid the same, and the said plaintiff bank and other parties hereto restored to this defendant 212 head of cattle so wrongfully taken by them as hereinbefore set out, and which are in said damaged and injured condition, as hereinabove described, but kept and retained and converted to their own use and benefit or wrongfully and unlawfully destroyed 17 head of said cattle of the value of $25 per head at the time the said cattle were so wrongfully taken and converted by them as aforesaid.

"That by reason of the malicious, fraudulent, and unlawful acts of said bank and the said parties named herein as defendants to the cross-bill, this defendant as been injured and damaged in the sum of $15 per head for said 212 head of cattle restored to him as aforesaid, and the sum of $25 per head for said 17 cattle so wrongfully taken, destroyed, and converted by the said bank and the other parties herein named as aforesaid, being a total sum of $3,605 actual damages suffered and sustained by reason of said acts aforesaid."

[1,2] We think the assignment should be overruled. Appellants urged neither a general demurrer nor a special exception to the cross-petition, but treated same as sufficient, and went to trial on same. If appellants believed that appellee's cross-bill was defective and did not state a cause of action, they should have excepted to same. Their assertion of fundamental error here is, in effect, a general demurrer to the sufficiency of appellee's cross-bill, and is here made for the first time. If appellants' objections to the sufficiency of appellee's cross-bill had been presented to the court below and sustained, appellee would have had the right to amend same to meet the exceptions sustained, if he could. To sustain the contention here raised would deprive him of that right. The rule seems to be well settled that in determining on appeal whether in a suit for damages the petition was so fundamentally defective in its allegations as to damages as to be insufficient to support a recovery, the petition will be held good if it was good as against a general demurrer. We think the allegations of damages in the cross-bill were good as against a general demurrer. Every reasonable intendment and presumption that could have been indulged in favor of the petition below must be indulged here. Railway Co. v. Hamilton (Tex. Civ. App.) 163 S. W. 666 (writ denied); Lipscomb v. Adamson Lumber Co. (Tex. Civ. App.) 217 S. W. 228; El Paso & Southwestern Co. v. Hall (Tex. Civ. App.) 156 S. W. 356; Tiefel Bros. & Winn v. Maxwell (Tex. Civ. App.) 154 S. W. 319; Houston Tie & Lbr. Co. v. Hankins (Tex. Civ. App.) 200 S. W. 237.

Appellants' second assignment of fundamental error is:

"The cross-bill in this case is insufficient to show a cause of action against the Cleveland State Bank, for the reason that said cross-bill alleges that the property was seized by the sheriff of San Jacinto county under a writ of sequestration, and that whatever damage was occasioned to the property occurred while in the exclusive control and safe-keeping of the officer levying the writ, and fails to allege any act by the Cleveland State Bank and the other defendants in said cross-action that occasioned any damage, but on the contrary affirmatively shows that whatever damage, if any, was inflicted upon the cattle, occurred while said cattle were in the exclusive possession of the sheriff of San Jacinto county and beyond the control and possession of the Cleveland State Bank."

The allegations in the cross-bill in this respect complained of are:

"That all of said parties reside in Liberty county, Tex. And the said E. L. Bramlette, J. M. Hubert, Chas. I. Vick, J. D. McMahon, Wash Berry, and J. S. Johnson are stockholders, officers, and directors in the plaintiff Cleveland State Bank, and the said bank and all of said parties did and performed and acquiesced and consented in the doing and performing of all the wrongful, malicious, fraudulent, and unlawful acts hereinafter mentioned for and on behalf of themselves and for and on behalf of the Cleveland State Bank. * * *

"That on or about the 29th day of November, 1922, all of said parties and said bank wrongfully, maliciously, fraudulently, and arbitrarily, and without reasonable grounds and without probable cause and without any reasonable basis in fact for such action, declared said note herein sued upon due and wrongfully and maliciously and unlawfully and fraudulently procured the issuance of a writ of sequestration herein upon alleged facts which did not exist and for the existence of which they nor either of them had any probable grounds for belief; that the facts set up in the affidavit upon which sequestration was based and procured to be issued were not true, and said note having been declared due by plaintiffs as aforesaid without right, said suit out of which said writ grew was improvidently and wrongfully brought, and by reason of said facts no writ of sequestration could legally issue out of the same at the time and upon the alleged facts set out in said affidavit as forming the basis for the issuance of said writ. * * *

"That said writ so issued by said parties and said bank as aforesaid was directed to the

sheriff of San Jacinto county, Tex., and they wrongfully and unlawfully, maliciously, and fraudulently caused and procured thereunder the taking and conversion without the consent of this defendant of 230 head of cattle belonging to this defendant from the range of said county and which were of the reasonable market value of $25 per head. That said cattle so taken as ·aforesaid were with the consent and connivance and suggestion of the bank and said parties removed a great distance from their said range, to wit, out of San Jacinto county and into Liberty county, and there placed and held upon insufficient pasturage and were frequently dipped while in a weak condition by reason of such insufficient care and having been driven said great distance aforesaid, and were otherwise mistreated and neglected by said bank and said other defendants named herein. All of said acts in reference to said cattle so procured to be taken were done and performed by the said bank and the other parties named herein and with their knowledge and consent, and under and by their direction and under and by reason of said wrongful and illegal writ of sequestration aforesaid, and under their pretended rights under said mortgage aforesaid."

[3] The law provides that before a litigant may have the. benefit of a writ of sequestration, he must execute a good ' and sufficient bond, payable to the defendant in the suit, conditioned that· the person suing out such writ will pay to the defendant all such damages as may be awarded against him in case it shall be decided that the sequestration was wrongfully sued out. The question of whether appellants wrongfully sued out the writ of sequestration was upon full proof submitted to the jury, and they found against appellants. It follows, therefore, that the writ having been wrongfully sued out by appellants, they are liable for 'such damages as are shown to have arisen out of its unlawful issuance and execution and cannot shield themselves from the consequences of their own wrongful act by showing that the damages suffered to the property· seized occurred while it was in the hands of the officer executing the writ. Article 7097, Vernon's Sayles' Ann. Civ. St. 1914; McFaddin v. Sims, 43 Tex. Civ. App. 598, 97 S. W. 335; Kanaman v. Hubbard (Tex. Civ. App.) 160 S. W. 304, 307; Sweeney v. Farmers' Rice Milling & Storing Co. (Tex. Civ. App.) 137 S. W. 1147; Portier v. Fernandez, 35 Tex. 534; Poff v. Miller (Tex. Com. App.) 235 S. W. 570, 575; Vela v. Guerra, 75 Tex. 595, 12 S. W. 1127; Norwood v. Interstate. Bank, 92 Tex. 268, 48 S. W. 3.

In McFaddin v. Sims, supra, Sims recovered damages on account of the alleged wrongful suing out of a writ of attachment which was levied upon 23 head of mules and 1 horse, and among other damages claimed was the value of the horse, which died while in the possession of the sheriff. The court, speaking through Judge Pleasants, said:

"The plaintiffs would not be liable for the value of the horse, which died while in possession of the sheriff, *unless the attachment was wrongfully sued out*, notwithstanding the death of the horse may have been due to the negligence of the sheriff or his agent; and if the item of $125 found by the jury in favor of defendant was intended as a finding for the value of the horse, it cannot be sustained, *because the jury further found that the attachment was not wrongfully sued out*." (Italics ours.)

In Kanaman v. Hubbard, supra, the issue was raised as to whether or not the plaintiffs in attachment were responsible for the damages inflicted upon an automobile by the sheriff while· it was in his possession, taken by him under a writ of sequestration caused to be issued by the plaintiffs. On passing upon the question, Judge Rasbury said:

"As we have shown at another place, the car was injured while in the possession of the sheriff, or his bailee, without contribution thereunto by the appellees. Appellees, however, are sought to be held liable as matter of law on the ground that they are plaintiffs, caused the · issuance of the writ, and therefore liable for the negligence and misconduct of the officer. In our opinion, the position is not tenable in the absence of a showing that the appellees participated in the negligent acts of the officer. McFaddin v. Sims, 43 Tex. Civ. App. 598, 97 S. W. 335. *For wrongfully suing out attachment process plaintiff is, of course, directly liable to the defendant.* McFaddin v. Sims, supra." (Italics ours.)

[4] The other authorities cited above are not directly in point as to the facts on the question of damages to attached or sequestered property while in the hands of the. officer executing the process, but are cited to show the well-established rule that litigants are generally held liable for damages to property seized under process *wrongfully* sued out. This is not only justly so, but is in obedience to the direct command of the statute, article 7097, supra, and the condition of the bond required thereunder to be given to secure the issuance of the writ.

Appellants cite us to Brunson · v. Dawson State Bank (Tex. Civ. App.) 175 S. W. 438, and Kanaman v. Hubbard (Tex. Civ. App.) 160 S. W. 304, as sustaining their contention that whatever damage the cattle suffered by reason of the sequestration occurred while they were in the control and safe-keeping of the officer levying the writ, and therefore appellants are not liable for such damages.

In Kanaman v. Hubbard, Hubbard sued Kanaman, seeking to rescind the sale of an automobile by Kanaman to Hubbard on the ground of fraud, and to recover the price paid for same. Ancillary to the suit, Hubbard caused an attachment to be levied upon the car. Kanaman answered, denying the fraud alleged, and pleaded that the attachment was wrongful and that he had been damaged thereby, and prayed for judgment. Upon a jury trial and verdict, judgment was rendered for Hubbard. The jury found that the process was not wrongfully issued. It was

shown that the injury to the car occurred while it was in the possession of the sheriff, and held by him under the writ of attachment. The process being rightfully sued out, the court held no liability was shown, but further said:

"For wrongfully suing out attachment process plaintiff is, of course, directly liable to the defendant."

In Brunson v. Dawson State Bank, the plaintiff brought suit upon two notes and to foreclose a mortgage upon two mules given to secure the payment of the notes, and at the institution of the suit sequestrated the mules. The defendant, in reconvention, sought to recover damages for the sequestration of the mules. The mortgage empowered the mortgagee, in default of payment of the debt, to take charge of the mules. The notes were past due, and the court held that as default was shown, the plaintiff had done no more than the contract authorized him to do, and the process not being wrongfully sued out, and there being no evidence that the plaintiff participated in the negligent acts of the officer levying the writ, no liability against plaintiff was shown. The facts of that case are not on all fours with the facts of the instant case. In that case, both of the notes were past due—default had been actually made. In the instant case there was no actual default in the payment of the debt. While appellants contend that they elected to mature their debt against appellee in advance of its actual maturity, claiming the right to do so under their mortgage, still when the debt became due it was paid promptly by appellee, and the jury found that in declaring the debt due in advance of its due date, and in sequestrating the cattle, appellants were not acting in good faith nor upon probable cause. So, it is seen in each of the cases cited by appellants that the process was not wrongfully sued out, the persons suing same out being held to have acted within their full legal rights, while in the instant case the jury found, upon sufficient evidence, that the process was wrongful.

Appellants' third assignment of fundamental error is:

"The charge of the court in submitting question No. 1 is erroneous, and cannot form the basis of a verdict or a judgment, for the reason that the court submits, under the head of question No. 1, five separate and distinct questions or subjects of inquiry, and instructs the jury to answer yes or no to all of them when the jury might have answered one or more or either of said questions yes or no if the same had been submitted separately, and the verdict of the jury is not responsive to the issues submitted by the court, and is in fact no verdict of the jury at all."

Question No. 1 submitted to the jury, which is here complained of, is as follows:

"At the time of suing out of the writ of sequestration in question, did the Cleveland State Bank, acting through its proper officers, in good faith and upon reasonable grounds conclude that the cattle covered by the chattel mortgage given to it by W. R. Turner were being either neglected, or injured, or abandoned, or otherwise mistreated or handled by the said W. R. Turner, so as to impair said bank's security or render said bank insecure? You will answer this question yes, or no, as you find the facts to be."

We think the assignment should be overruled. Article 1971, Vernon's Sayles' Ann. Civ. St. 1914, provides:

"The charge shall be in writing and signed by the judge; after the evidence has been concluded the charge shall be submitted to the respective parties or their attorneys for inspection and a reasonable time given them in which to examine it and present objections thereto, which objections shall in every instance be presented to the court before the charge is read to the jury, and all objections not so made and presented shall be considered as waived. * * *"

[5-7] No exceptions or objections whatever were made in the court below to either the form or the substance of the charge, and under the provisions of article 1971, supra, all objections not made were waived. G. T. & W. Ry. Co. v. Dickey, 108 Tex. 126, 187 S. W. 184; Express & Baggage Co. v. Ablon, 110 Tex. 235, 218 S. W. 1030; Ferguson v. Rhoades Drilling Co. (Tex. Civ. App.) 271 S. W. 155. Moreover, the presumption is that public officers perform their duties as required by law, and hence it is presumed that the trial judge prepared his charge and presented it to the parties and their attorneys for inspection and gave them a reasonable time in which to present objections thereto, and no objections having been urged by appellants, it must be held that they approved said charge and should not here be heard to challenge same. Furthermore, we do not believe that appellants were injured by the charge. If the jury should have found from the facts in evidence that any or either one of the matters contained in the charge was true, they were instructed to answer the question in favor of appellants. In other words, the jury were required to find from the evidence that all and every one of the matters mentioned in the charge did not exist before they could answer against appellants.

Appellants' first assignment of error asserts that under the terms of the mortgage given by Turner to appellant Cleveland State Bank, it had the right to mature its note and to seize the cattle covered by the mortgage, if at any time, in the judgment of the bank, the cattle should be neglected, injured, abandoned, or otherwise mistreated or mishandled by Turner so as to impair the security given the bank, and further asserts that the undisputed evidence showed that Turner had neglected the cattle covered by the mortgage to such extent that the officers of the bank, in

good faith, believed that said security was being impaired, and therefore the verdict of the jury should have been for the bank, and that the court erred in refusing to set aside the verdict and in failing to grant appellants a new trial.

[8, 9] The assignment is overruled. This very question was submitted to the jury upon a special issue, not in any wise objected to by appellants, and the jury found against them. The jury's finding was, in effect, that appellants were not acting in good faith and upon reasonable grounds when they concluded to and did declare the note due prior to its due date and sequestrated the cattle. We think the record supports the jury's finding. But appellants earnestly insist that as the bank thought it was necessary to declare the note due and to sequestrate the cattle, the question of whether or not they were justified in so doing is not an issuable fact. They say:

"If the bank made a mistake in judgment and yet acted in good faith upon a disputed state of facts, Turner was bound by the action of the bank and could not complain of it. * * *"

This contention is not sound and is in the face of well-settled law. If the grounds upon which appellants secured the writ were false or untrue, appellants are not protected by what they might have believed. Their good faith would avail them only against exemplary damages, and not as to actual damages suffered by reason of the wrongful issuance of the writ. Fred Mercer Dry Goods Co. v. Fikes (Tex. Civ. App.) 211 S. W. 830; Central Transfer & Storage Co. v. Wichita Falls Motor Co. (Tex. Civ. App.) 222 S. W. 688; Ricketson v. Best (Tex. Civ. App.) 134 S. W. 353, 354; Yarborough v. Weaver, 6 Tex. Civ. App. 215, 25 S. W. 468; Culbertson v. Cabeen, 29 Tex. 247, 255; Kaufman v. Wicks, 62 Tex. 237; Blum v. Strong, 71 Tex. 325, 326, 9 S. W. 167; Viviola v. Kuezek, 1 White & W. Civ. Cas. Ct. App. § 634.

[10] Appellants also insist that the mortgage gave the appellant bank an absolute and unconditional right to determine at any time as to the insecurity of its debt, and if by it deemed insecure to take possession of the mortgaged property, and therefore by the exercise of said right they incurred no liability. The mortgage authorized appellants to declare the note due and to take charge of the cattle only upon the existence of certain facts. The right to do so must, as a matter of law, be exercised only upon good faith and upon reasonable grounds, and whether the act was in good faith and upon reasonable grounds was a question of fact for the jury. It would be a monstrous doctrine to say that simply because a lienholder was empowered by his mortgage when he elected his debt insecure or that the mortgagor was neglecting the property mortgaged, he could arbitrarily and not in good faith and without reasonable grounds prematurely declare the debt due and seize the debtor's property, much to his injury, and when called upon to recompense the owner for the wrongful act, foreclose the matter by saying, "You gave me the right and I exercised it to suit myself." Though held in some jurisdictions to be an arbitrary power to be exercised at the will of the lienholder, the sounder doctrine, supported by the great weight of authority, has never countenanced such high-handed dealings fraught with the possibilities and opportunities of injustice and oppression, but reads into all such contracts the provision that the exercise of such rights and powers must be in good faith and upon reasonable grounds. 11 C. J. § 254, p. 555.

By their fourth and fifth assignments of error, appellants say that the court should have granted them a new trial, because, as they contend, there was no evidence upon which to base a judgment for any amount, the evidence failing to show the kind or class of cattle seized, or the value thereof at the time of the seizure or at the time of their return to Turner, hence no way by which the jury could determine the amount of the loss, if any, inflicted upon Turner, and therefore no evidence upon which to base the judgment of the court.

[11, 12] Under these propositions appellants contend that the measure of damages appellee would be entitled to recover, if any, is the difference between the market value of the cattle at the time of their seizure and their market value at the time they were returned, and not their intrinsic or reasonable value. It was not necessary for appellee to allege the market value of the cattle. Under the general allegation of value, proof of market value is admissible, and if there was no market value for the cattle at the time and place of their seizure and return, then proof of their intrinsic value could be made. In such case the measure of damages, if any, to the cattle was the difference between their intrinsic or reasonable value at the time and place where they were seized and their intrinsic or reasonable value at the time of their return. It is shown without dispute that there was no market for the cattle, and hence no market value, and so proof of their reasonable or intrinsic value was admissible. Railway Co. v. Chittim (Tex. Civ. App.) 40 S. W. 23; Railway Co. v. Hall (Tex. Civ. App.) 156 S. W. 356; Railway Co. v. Parke (Tex. Civ. App.) 169 S. W. 397, 400; Railway Co. v. Crews (Tex. Civ. App.) 139 S. W. 1049, 1052; Railway Co. v. Zumwalt (Tex. Com. App.) 239 S. W. 912; Lang v. Dougherty, 74 Tex. 226, 233, 234, 12 S. W. 29. Turner's testimony as to there being no market value and as to the reasonable or intrinsic value of the cattle was neither objected to nor disputed. No effort was made by appellants to show that there was a market value of the cattle at the time and place where they were seized, or at the time

they were returned, nor did they attempt to show that Turner's evidence as to their reasonable value was not true. The assignments are overruled.

By their sixth, seventh, eighth, ninth, tenth, eleventh, and thirteenth assignments, appellants complain that the verdict of the jury in assessing the damages in favor of appellee is grossly excessive, and assert that same was influenced by passion and prejudice on the part of the jury.

[13] The jury, in answer to a special issue, found the damages to be $3,165.77. The proof showed that 230 head of appellee's cattle were taken into custody, and that 213 were returned, and that 17 were lost. Appellee testified that the cattle were worth $20 per head at the time they were seized, and worth only $7.50 per head at the time they were returned. No effort was made to show that this was not true, or that the cattle were worth less than $20 per head at the time they were seized, or worth more than $7.50 per head when returned. In fact, appellants made no effort to show a different value, market or otherwise, than was shown by appellee. This being the undisputed evidence, then the cattle were damaged $12.50 per head, and 213 head amounted to $2,662.50. Fifteen head of the 17 head reported dead and lost were not returned, and the undisputed evidence of appellee showed them to be worth $20 per head. This amounted to $300, which makes the total loss or damage $2,962.50. Appellee remitted $250 from the amount of the verdict, which leaves $2,915.77, for which judgment was rendered. Lang v. Daugherty, 74 Tex. 226, 233, 234, 12 S. W. 29. Appellants argue that 46 or 47 of the 230 head of cattle seized not belonging to appellee were returned, leaving only 184 head upon which damages were to be assessed if at all. This is not a true statement from the record. Appellants quote from the testimony of Turner to sustain their contention, but they entirely omit any reference to his testimony, both on recross and redirect examination, upon this point, where he says repeatedly that the 46 or 47 head of cattle in question were not cattle included in the mortgage, and were not counted in the 230 head, but were over and above the 230 head of his cattle that were seized and held by appellants. The undisputed testimony of Turner as to the 46 or 47 head of cattle referred to by appellants in their brief shows that these 47 head were not included in the mortgage, were not held with the 230 head seized and carried to Liberty county, were not included in the number seized under the mortgage, and were not returned with them or as a part of them. Furthermore, it appears that the 47 head of cattle seized by appellants belonged to a son of appellee, and that under and by virtue of other legal proceedings they were released. And, too, the testimony of J. B. Clark, the deputy sheriff who made the return upon the writ under which the cattle were taken, shows that the 47 head of cattle were not included in the cattle seized here in question, nor as a part of the cattle returned. While the jury rendered a verdict for $3,165.-77, we think it altogether probable that some confusion arose in the minds of the jury because of the testimony as to the number of cattle seized of different brands, the number released, the number that escaped, the number that died, some before the cattle were returned and some immediately after, or from a miscalculation, and in any event the remittitur filed by appellee covered any mistake or miscalculation of the jury in arriving at their verdict. Appellants seem to recognize that there was merit in appellee's claim for damages, for in their eighth assignment of error, complaining of the excessiveness of the verdict, they say:

"* * * Such verdict should not have been for more than $500.00, or approximately that amount."

Believing that a careful consideration of the whole record amply sustains the contentions of appellee and fully supports the findings of the jury, and that no reversible error apparent on the face of the record or otherwise is made to appear, the judgment should be affirmed, and it is so ordered.

Affirmed.