**IPIK DOOR COMPANY, Inc., et al.,**
**Appellants,**

**v.**

**LOESSIN & HERNDON, INC., Appellee.**

**No. 14697.**

Court of Civil Appeals of Texas.

Houston.

July 3, 1967.

Rehearing Denied Aug. 24, 1967.

**834**

Dillingham & Schleider, Ben H. Schleider, Jr., Houston, for appellee.

Ragan & Russell, Joe S. Moss, attys., Houston, John L. Russell, Houston, of counsel, for appellants.

BELL, Chief Justice.

The appellee sued appellants, Ipik Door Company, Inc., C. V. (Buster) Kern, Sheriff of Harris County, and his deputy, Marvin Zindler, for damages for conversion of lumber and materials belonging to it. Trial was to a jury and based on the jury verdict the court rendered a joint and several judgment against the appellants for actual damages in the amount of $4,314.01 and for exemplary damages of $1500.00.

The incident giving rise to the claim was the levy of execution by the Sheriff, through his deputy, the execution having issued pursuant to a judgment obtained by Ipik Door Company, Inc., against Texas Millwork, Inc., in the amount of $2,247.75. The lumber and materials levied on were located at the Texas Millwork plant on the Hempstead Highway in Harris County at the time of the levy on February 2, 1963. Sale under execution was held February 18, 1963, and the lumber and materials were purchased by Ipik. At the time of trial Ipik still had the lumber and materials at its place of business in Louisiana.

The pleadings and statement of facts reveal that Ipik, through its Houston attorney, who had obtained the judgment and who was directing the deputy sheriff in making the levy, took the position that all the lumber and materials belonged to Texas Millwork. Texas Millwork and appellee took the position that all of the lumber and materials levied on was owned by appellee and that it was in possession of Millwork which was processing the lumber and manufacturing different kinds of items such as moulding, door jambs, doors, and what Mr. Loessin referred to as mill work items.

The jury answered as follows to the issues submitted:

1. *All* of the lumber and materials removed from the premises of Texas Millwork by appellants was owned at the time by appellee.

2. The market value on February 2, 1963, of such lumber and materials, in Houston, was $4,314.01.

3. In taking the lumber and materials, the defendants, acting jointly and severally, acted wilfully and wantonly and in disregard of the rights of appellee.

4. The sum of $1,500.00 would reasonably compensate appellee for exemplary damages.

5. The lumber and materials levied on had not been sold by appellee to Texas Millwork, Inc.

Without setting out specifically the 13 Points of Error urged by appellants, we

will merely state the substantial complaints. Appellants complain there was no evidence to support the jury's finding that all materials and lumber belonged to appellee, or that such answer was contrary to the overwhelming weight and preponderance of the evidence. There was no evidence to support the answer of market value because the evidence showed at most the retail value instead of value in bulk, or, at most the answer was contrary to the overwhelming weight and preponderance of the evidence. There was no evidence to support the jury's finding that the taking was wilful and wanton, or, the finding was contrary to the overwhelming weight and preponderance of the evidence. The finding of $1,500.00 exemplary damages has no support in the evidence, or, is contrary to the overwhelming weight and preponderance of the evidence.

We overrule all points that there was no evidence to support the answers of the jury to the issues and also that such answers were contrary to the overwhelming weight and preponderance of the evidence.

◼ There is a sharp conflict in all of the evidence on all issues submitted. We will not recite all evidence, but will give its substance and what the jury could well conclude concerning it. According to the testimony of Mr. Loessin, who owned an interest in appellee, and of Mr. R. A. Stolz, Jr., President of Texas Millwork, for quite a number of years prior to June 30, 1961, Texas Millwork had bought lumber from appellee and other persons. It used the lumber thus purchased to manufacture mill work items, and then marketed them. However, for some time prior to June 30, 1961, Texas Millwork had been experiencing financial difficulty and, according to Mr. Stolz, he decided not to purchase materials, but to limit his work to soliciting orders from persons who desired mill work items to be manufactured. Too, appellee had refused to sell Texas Millwork any more lumber and materials. Under this arrangement the customer would furnish him with the materials and lumber which they had purchased and he would manufacture the items desired and would be paid for his work.

As between appellee and Texas Millwork, the evidence shows that the purchase account Texas Millwork had with appellee was closed June 30, 1961. At that time Texas Millwork owed appellee $3,543.25. This is shown on a ledger sheet of Texas Millwork, which shows the account closed. This sheet was shown to Ipik's attorney on the day of but before the levy of execution. This was uncollectible and appellee charged it off on its income tax as a bad debt. Thereafter, on September 28, 1962, appellee by letter agreement signed by appellee and Texas Millwork stated it was sending Texas Millwork some yellow pine that was to be made into split door jambs in accord with the sample furnished by Gulf Sash & Door, Inc. In the letter it was stated appellee was to pay Texas Millwork $50.00 per 1000 feet based on footage that came from the mill. Appellee was to deduct 15% of this $50.00 to apply on the debt of $3,543.25. The testimony of Mr. Stolz and Mr. Loessin was that after this letter appellee resumed business with Texas Millwork, but appellee bought and furnished all lumber and materials and only paid Texas Millwork for the manufacturing work it did, paying therefor the amount stated with the 15% deduction stated except that some time later this deduction, due to Texas Millwork's financial straits, was suspended. While the letter referred to one specific shipment and the terms of payment, both Stolz and Loessin testified this was the agreement between them as to all work thereafter done for appellee by Texas Millwork. They both testified that at all times thereafter no material or lumber belonged to Texas Millwork, but was bought and paid for by appellee and shipped to Texas Millwork to be manufactured into items as directed by appellee. Mr. Stolz and Mr. Loessin testified that all lumber and materials taken under execu-

tion was that furnished by appellee on which Stolz was working under the arrangement above stated. Too, Stolz stated that at such time there was no other material and lumber except non-usable odds and ends at the plant when levy was made, other than that belonging to appellee. Really there is no evidence to refute the above testimony, except as to two items which we will now notice. Appellants' first and second points are largely based on evidence bearing on such items.

■ It appears that Mr. Stolz did pick up some masonite to go into some doors for which he actually paid. However, Mr. Loessin testified payment was from funds he had theretofore advanced to Texas Millwork. The jury could well conclude, in the light of all testimony, that it was therefore paid for and owned by appellee.

■ The second item concerning which there could be a controversy involves some yellow pine split door jambs that had been manufactured by Texas Millwork out of lumber and materials furnished by appellee. It appears that by invoice dated October 25, 1962, appellee had billed Gulf Sash & Door, Inc., for products sold the latter in the sum of $2,913.80. This amount had been paid to appellee. However, various of these items were rejected by Gulf Sash & Door and returned to appellee to be reworked because not conforming to specifications. They were among the materials seized. No refund had been made of the amount of their value of $749.11 at the time of the levy. However, after the levy and on February 26, 1963, appellee made a refund of this amount. It appears to us that the jury could have well concluded they had not been accepted by Gulf Sash & Door, but had been rejected and therefore title had not passed out of appellee and a refund was owed, though it was not paid until later. They still belonged to appellee, or so the jury could have found.

■ The answer to Issue No. 2 as to the market value of the lumber and mate-

rials taken is supported by the evidence and the answer is not contrary to the overwhelming weight and preponderance of the evidence.

Both Mr. Stolz and Mr. Loessin, who because of their long experience in Houston and Harris County in this type of business, were well qualified to testify to the value, and did testify to the value as found by the jury. We find nothing in the record showing this was the retail as distinguished from bulk value. Nor do we find any such objection to this effect made to the offer of the evidence. Even if there had been, there is no point of error here that the court erred in admitting testimony of retail value. Of more significance, however, is the fact that there was no objection to the special issue on the ground that it submitted an improper measure of damages. Any error, if there was one, was, therefore waived.

■ We are also of the view that the jury's answers to all issues relating to exemplary damages find support in the evidence and such answers are not contrary to the overwhelming weight and preponderance of the evidence.

Sometime previous to February 2, when levy was made, Mr. Zindler had by telephone communicated with Texas Millwork seeking to obtain payment of the Ipik judgment, but was told it was unable to pay. About 12: or 12:30 o'clock on Saturday, February 2, the attorney for Ipik, Mr. Zindler, and another deputy sheriff, went to the premises of Texas Millwork to collect the judgment, if possible, and if it were not possible to levy execution. When the judgment was presented, Mrs. Stolz said they were unable to pay. Ipik's attorney then set about to find property to be levied on. There was certain equipment not levied on because it was determined that it had been conveyed to a finance company that had held a mortgage on it. There were two items of equipment levied on that are not here in controversy. The attorney for Ipik and Mr. Zindler were

told by Mr. and Mrs. Stolz that all the lumber and materials on hand belonged to appellee and not Texas Millwork. Mrs. Stolz showed the attorney the agreement of September 28, 1962, and the method of operation was explained. The ledger sheet showing the debt of Texas Millwork to appellee was shown the attorney. There is evidence, though it is in conflict, that the attorney stated he thought the asserted arrangement was a sham. The material, according to the evidence of Mr. Stolz, is that which the attorney pointed out to Mr. Zindler—all the lumber and materials that were taken. While the attorney was present, Mrs. Stolz tried to get in touch with Mr. Loessin but was unable to get him personally. After the attorney had left, and while the lumber and materials were being loaded on the trucks that the Sheriff's office had hired, Mr. Loessin came to Texas Millwork premises. He told Mr. Zindler the lumber and materials belonged to him. Mr. Zindler told him Ipik's attorney had pointed out the material to take and he had to take it. Mr. Loessin told Mr. Zindler he was the law and he could not keep him from taking it, but he (Loessin) would hold the parties liable. There is evidence that Mr. Zindler said the Sheriff was protected because he had a bond. Mr. Zindler told Mr. Loessin that Mr. Loessin could get the property only by filing an affidavit and putting up a bond. We presume he was referring to replevy. Too, after the levy, but before sale, appellee's attorney was in communication with the attorney for Ipik seeking a return of the property, but the efforts were unsuccessful.

We are of the view that the evidence supports wilful and wanton seizure of appellee's property, authorizing exemplary damages. Lang v. Daugherty, 74 Tex. 226, 12 S.W. 29; Epps & Mattox v. Hazlewood, 40 Tex.Civ.App. 325, 89 S.W. 809, no writ hist.

While we have not discussed appellants' authorities, we have read them. We do not disagree with the rules therein stated.

The rules are just not applicable to the facts before us.

The other Points raised by appellants, though not discussed, have been considered by us and found to be without merit.

Affirmed.